JOHN L. ATKINS, ON BEHALF OF HIMSELF AND ALL OTHER CITIZENS AND TAXPAYERS OF THE CITY OF DURHAM, WHO MAY DESIRE TO JOIN HIM IN THIS ACTION, v. CITY OF DURHAM.

(Filed 15 June, 1936.)

1. **Municipal Corporations B c—Establishment and maintenance of playgrounds held governmental function of populous city.**

   Municipal corporations are given authority by N. C. Code, 2795, 2776 (b), 2787 (12), to establish parks and playgrounds necessary to the maintenance of the health of their inhabitants, and an ordinance of a populous industrial city which provides for the issuance of bonds to establish and maintain parks and playgrounds for the children of the city *is held* a valid exercise of its police power under legislative authority for the promotion of the public health, safety, and morals.

2. **Taxation A a—Bonds to establish and maintain playgrounds in populous city held for necessary municipal expense not requiring vote.**

   Defendant municipality proposed to issue its bonds to establish and maintain playgrounds for its children.  It appeared that defendant is a populous industrial city, that it had never defaulted on its bonds, principal or interest, that its tax rate is within the prescribed limitations, and that no petition had been filed demanding that the question be submitted to the voters, although the ordinance provided that it should not take effect for thirty days in order to afford the prescribed time for the filing of such petition under the Municipal Finance Act.  *Held:* The bonds are for a necessary municipal expense within the meaning of Art. VII. sec. 7, of the Constitution of North Carolina, and it is not required that the issuance of the bonds be submitted to a vote of qualified electors of the municipality.

APPEAL by plaintiffs from *Frizzelle, J.,* at 4 May Term, 1936.  From DURHAM.  Affirmed.

This is an action brought by plaintiffs against defendant to restrain it from issuing $25,000 of bonds for public parks and playgrounds. The prayer of plaintiffs is as follows:

"1. That the defendant be perpetually restrained and enjoined from issuing and selling the said bonds, and from levying and collecting the said tax upon the taxable property of the city of Durham, authorized to pay the principal and interest of said bonds, for the reason that,

"(a) The acquiring of lands or rights in lands for public parks and playgrounds and the development and improvement of such lands and other lands now owned by the city of Durham, and the furnishing thereof with equipment and apparatus, is not a necessary expense of the city.

"(b) The said bonds are for a purpose other than the payment of the necessary expenses of the city, and the question of the issuance of the said bonds and the levy of said tax has not been approved by the voters of the municipality at an election as provided in the said the Municipal Finance Act.

"(c) That the city is attempting to pledge its faith and loan its credit and collect a tax for purposes other than a necessary expense of the city, without the vote of a majority of the qualified voters therefor."

The defendant set up certain facts showing that the proposed bonds were for a necessary expense in the promotion of health, safety, and morals of the people of the city of Durham. That the estimated population of the city of Durham at this time is 64,000. That there are 7,580 white children in the public schools of the defendant city, and 4,890 colored children in the public schools of the defendant city. That there are approximately 12,700 industrial workers, residents of the defendant city. That the assessed valuation of real and personal property for taxation for the fiscal year 1935-1936 is $70,718,558. That the city tax rate for the said fiscal year is $1.70 on the $100 valuation. That the defendant city has never defaulted in the payment of interest or bonds.

By agreement of counsel, the case was heard on its merits by his Honor, J. Paul Frizzelle, Judge presiding, at Durham, N. C.

After hearing the evidence and argument of counsel, the court held as a matter of law that the ordinance authorizing the $25,000 Public Park Bonds was a valid and subsisting ordinance of the city of Durham, and that said defendant in enacting said ordinance was performing a governmental function, useful and necessary in the preservation and promotion of the health, safety, and morals of the people, to which plaintiff excepted and assigned same as error. Exception No. 1.

After hearing the evidence and argument of counsel, the court held as a matter of law that the proposed issuance of said bonds for public park purposes and the proposed levying of a tax to pay the same and the

annual interest thereon is a necessary expense and does not fall within the inhibition of Article VII, section 7, of the Constitution of the State of North Carolina; to which plaintiff excepted and assigned the same as error. Exception No. 2.

The court signed the judgment as set out in the record, to which plaintiff excepted and assigned same as error. Exception No. 3.

The following judgment was rendered in the court below: "This cause coming on for a hearing upon the complaint of the plaintiff, to be used as an affidavit, before his Honor, J. Paul Frizzelle, Judge presiding, and the defendant entering a general appearance and filing answer, upon the answer used as an affidavit in motion to dismiss, and by agreement of counsel, the case being heard on its merits, after the hearing of the pleadings and evidence offered, and the arguments of counsel, I find the following facts:

"1. That the plaintiff is a taxpayer of the city of Durham.

"2. That the defendant city of Durham is a municipal corporation, duly created, organized, and existing under and by virtue of law, and possessed with certain powers and authorities conferred upon and delegated to it by the Legislature of the State of North Carolina, in particular, those powers set out in section 2787, section 2776, and section 2795, Consolidated Statutes of North Carolina.

"3. That the population of the city of Durham in 1870 consisted of 256 inhabitants; and that the population of the city of Durham in 1890 was 5,485; and in 1900 was 6,679; and in 1910 was 18,241; and in 1920 was 21,719; and in 1930 was 52,037; and that the estimated population of said city of Durham at this time is 64,000.

"4. That the outlays and maintenance of the public parks and playgrounds for recreational department of the city of Durham for the year 1925 were $5,400; and that said amount has gradually arisen, and said outlays aforesaid for the year 1935 were $20,937.25. That small fees are charged and collected in connection with the operation of the swimming pools and use of said conveniences in the public parks and playgrounds of said defendant city, which fees are grossly less than the actual annual outlays and expenses incident for the maintenance of said parks, playgrounds, and recreational centers.

"5. That the assessed valuation of real and personal property listed for taxation for the fiscal year 1935-1936 is $70,718,558, and that the defendant city of Durham has never defaulted in the payment of interest and bonds.

"6. That the governing body of the defendant city of Durham on 20 April, 1936, duly adopted an ordinance authorizing $25,000 Public Park Bonds, all in the form, words, and figures as set out in the complaint.

"From the foregoing facts, the court arrives at the following conclusions of law:

"1. That the ordinance authorizing $25,000 Public Park Bonds was duly passed by the governing body of the defendant city of Durham, on 20 April, 1936, and the same is a valid and subsisting ordinance of the defendant city of Durham, and said defendant city of Durham, in enacting said ordinance, was performing a governmental function, useful and necessary in the preservation and promotion of the health, safety, and morals of the people.

"2. That the proposed issuance of said bonds for said public park purposes, and the proposed levying of a tax to pay the same and the annual interest thereon, is a necessary expense, and does not fall within the inhibition of Article VII, section 7, of the Constitution of the State of North Carolina.

"From the foregoing findings of facts and conclusions of law, it is ordered, adjudged, and decreed that the prayer for the restraining order herein be and the same is denied, and this cause is dismissed and the defendant will recover its costs, to be taxed by the clerk. J. Paul Frizzelle, Judge presiding."

The plaintiffs made the following exceptions and assignments of error: "His Honor erred in holding that the ordinance authorizing the $25,000 Public Park Bonds is a valid and subsisting ordinance of the defendant city of Durham, and that said city of Durham in enacting said ordinance was performing a governmental function, useful and necessary in the preservation and promotion of the health, safety, and morals of the people. His Honor erred in holding as a matter of law that the proposed issuance of said bonds for said public park purposes and the proposed levying of a tax to pay the same and the annual interest thereon is a necessary expense and does not fall within the inhibition of Article VII, section 7, of the Constitution of the State of North Carolina. His Honor erred in signing the judgment as set out in the record."

The exceptions and assignments of error made by plaintiffs and other necessary facts will be set forth in the opinion.

*W. H. Hofler for plaintiffs.*
*S. C. Chambers for defendant.*
*J. L. Morehead, amicus curiæ.*

CLARKSON, J. We do not think that any of the exceptions and assignments of error made by plaintiffs can be sustained. The record discloses that the city of Durham now has many parks and playgrounds, among them "Long Meadow Park," a gift to the city of Durham "for

the white people of Durham County," and "Hillside Park," "for the colored people of Durham County."

The city council of the city of Durham passed the following ordinance:

"Section 1. That the city of Durham issue its bonds pursuant to the Municipal Finance Act, as amended, in an amount not exceeding $25,000, for the purpose of acquiring lands or rights in lands for public parks and playgrounds, including any buildings thereon at the time of acquisition, and the development and improvement of such lands and other lands now owned by the city of Durham and dedicated for public park purposes, together with the construction or reconstruction of buildings thereon and the furnishing thereof with equipment and apparatus.

"Sec. 2. That a tax sufficient to pay the principal and interest of said bonds shall be annually levied and collected.

"Sec. 3. That a statement of the debt of the city has been filed with the clerk and is open to public inspection.

"Sec. 4. That this ordinance shall take effect 30 days after its first publication, unless in the meantime a petition for its submission to the voters is filed under said act, and that in such event it shall take effect when approved by the voters of the city at an election as provided in said act."

N. C. Code, 1935 (Michie), sec. 2947, in part, is as follows: "Ordinance requiring popular vote.—(1) When Vote Required.—If a bond ordinance provides that it shall take effect thirty days after its first publication, unless a petition for its submission to the voters shall be filed in the meantime, the ordinance shall be inoperative without the approval of the voters of the municipality at an election if a petition shall be filed as provided in this section. (2) Petition Filed.—A petition demanding that a bond ordinance be submitted to the voters may be filed with the clerk within thirty days after the first publication of the ordinance. The petition shall be in writing and signed by voters of the municipality equal in number to at least twenty-five per centum of the total number of registered voters in the municipality, as shown by the registration books for the last preceding election for municipal officers therein," etc.

In *Hill v. Elizabeth City,* 291 Fed., 194 (210), (written by *Judge H. G. Connor,* U. S. District Judge for Eastern District of North Carolina), it is said: "Section 2947, par. 1, provides for the election before bonds are issued, upon a petition to be filed within 30 days after the first publication of the ordinance. No such petition having been filed, the board of aldermen, on 9 October, 1922, adopted an ordinance for directing the issuance of the bonds. I find no valid objection to the proceedings taken by the board of aldermen, entitling plaintiff to enjoin

the issuance of the bonds." This decision is direct authority for denying the restraining order, but we go further.

When this ordinance was passed the city of Durham had a population estimated at 64,000, and 12,470 children enrolled in the public schools—7,580 white and 4,890 colored. There were approximately 12,700 industrial workers. The outlay for parks and playgrounds for 1935 was $20,937.25. The assessed value of real and personal property for the year 1935-1936 is $70,718,558. The defendant city has never defaulted in the payment of interest or bonds. The city tax rate is $1.70 on the $100.00 valuation.

Const. of N. C., Art. VII, sec. 7, is as follows: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

N. C. Code, *supra,* sec. 2795, in part, is as follows: "The governing body is hereby given power to make such rules and regulations, not inconsistent with the Constitution and laws of the State, for the preservation of the health of the inhabitants of the city, as to them may seem right and proper."

Section 2776—Art. 11 (A)—Recreation Systems and Playgrounds. (b) : "The city council or governing body of any city or town, or the county commissioners or governing body of any county, or the board of trustees or governing body of any school district, may dedicate and set apart for use as playgrounds, recreation centers, and other recreational purposes, any lands or buildings, or both, owned or leased by such municipality and not dedicated or devoted to another and inconsistent public use; and such municipality may, in such manner as may now or hereafter be authorized or provided by law for the acquisition of lands or buildings for public purposes, acquire or lease lands or buildings, or both, for said recreational purposes; or, if there be no law authorizing such acquisition or leasing of such lands or buildings, the governing body of any such municipality is empowered to acquire lands or buildings, or both, for such purposes by gift, purchase, condemnation, or lease."

Section 2787—Art. 15—Powers of Municipal Corporations. (12) "To acquire, lay out, establish, and regulate parks within or without the corporate limits of the city for the use of the inhabitants of the same."

The General Assembly, from the above quoted law, has given the governing body of municipal corporations plenary power to establish parks and playgrounds. The only contention of plaintiffs is that they are not a necessary expense and require a vote of the people under Art. VII, sec. 7, *supra,* of the Constitution of North Carolina.

From the facts on this record, we think the ordinance a valid exercise of its police power under legislative authority, and the bonds were for a necessary expense and did not require a vote of the municipality.

In the case of *Storm v. Town of Wrightsville Beach,* 189 N. C., 679 (681), speaking to the subject, it is said: "The question, what is a necessary expense, which is a judicial one for the courts to determine, is one that cannot be defined generally so as to fit all cases which may arise in the future. As we progress, we look for better moral and material conditions and the governmental machinery to provide them. 'Better access to the good things of life for all people,' safety, health, comfort, convenience in the given locality. Webster defines necessary: 'A thing that is necessary or indispensable to some purpose; something that one cannot do without; a requisite; an essential.' What is a necessary expense for one locality may not be a necessary expense for another. *Fawcett v. Mt. Airy,* 134 N. C., p. 125; *Keith v. Lockhart,* 171 N. C., p. 451. . . . The term in the Constitution, 'necessary expense,' is not confined to expenses incurred for purposes absolutely necessary to the very life and existence of a municipality, but it has a more comprehensive meaning. It has been held in this jurisdiction that streets, waterworks, sewerage, electric lights, fire department and system, municipal building, market house, jail or guard house are necessary expenses," citing numerous authorities.

In *White v. Charlotte,* 209 N. C., 573 (575), is the following: "The facts alleged in the complaint in this action are not sufficient to determine as a matter of law whether or not the defendants, in maintaining a public park in the city of Charlotte, and providing in said park a swing for the use of children and others who use said park for purposes of recreation, were thereby engaged in the performance of a governmental function only. For that reason, there was no error in overruling the demurrer filed by the defendants."

McQuillan, Municipal Corporations (2d Ed.), Vol. 3, sec. 1256 (1154), pp. 773-4, says: "It has been stated 'there is no one feature of city life which more greatly adds to its beauty and attractiveness than a well ordered park and boulevard system.' In densely populated cities, public parks are manifestly essential to the health, comfort, and pleasure of their citizens. Generally, express power is conferred on municipalities to purchase land for a park, or else power to purchase land for public purposes is construed to authorize the purchase of land for such purposes. So, generally, a municipality may lease lands for a public park. Likewise, the acquisition of land for a public park is for a 'public purpose' so as to authorize condemnation proceedings for such purpose," etc.

In the recent case of *Hale v. Comr. of Internal Revenue,* before U. S. Board of Tax Appeals, Docket No. 67105, decided 19 November, 1935 (not yet published in the reports), the Board said: "We think it definitely settled by the great weight of authority that the establishment and maintenance of public parks by a municipality is a public or governmental function. Everett B. Sherman, 27 B. T. A., 1169; Affd., *Commissioner v. Sherman,* 69 Fed. (2d), 755; *Kellar v. City of Los Angeles,* 179 Cal., 605, 178 Pac., 505; *Williams v. City of Birmingham,* 121 S. R., 14; *Epstein v. City of New Haven,* 132 Atl., 467; *Petty v. City of Atlanta,* 148 S. E., 747; *Board of Park Commissioners v. Prinz,* 127 Ky., 460, 105 S. W., 948. So, also, the maintenance of a public bathing beach is held to be a public function. *Gensch v. City of Milwaukee,* 190 N. W., 843; *Nemet v. City of Kenosha,* 172 N. W., 711; *Bolster v. City of Lawrence,* 225 Mass., 387, 114 N. E., 722.

"The general duty of a city to preserve the public health of its citizens is governmental, *City and County of Denver v. Maurer,* 106 Pac., 875, and the right of the municipality to maintain such recreational facilities as public parks, bathing beaches, and playgrounds rests on its duty to maintain public health. *Board of Park Comrs. v. Prinz, supra; Comr. v. Sherman, supra.*

"The care of the public health is, undoubtedly, a subject matter of general concern, and how it shall be accomplished is a public question. When its accomplishment is left to the municipality, it acts as a governmental agency and not in a proprietary capacity. *Scibilia v. Philadelphia,* 279 Pa., 549, 124 Atl., 273." There was no appeal from this decision.

The above so fully sustains defendant's contention, citing a wealth of authorities, that we do not give other cases of like import from different other states.

Mr. Morehead, in his brief as *amicus curiæ,* also cites many authorities sustaining the position of Mr. Chambers, attorney for defendant, that parks and playgrounds were a valid exercise of the police power in the promotion of health, safety, and morals, and were a necessary expense and, therefore, did not impinge Art. VII, sec. 7, *supra,* of the Const. of North Carolina. We quote interesting extracts from his brief: "Turning to the question of the influence of parks and playgrounds upon juvenile delinquency, we submit the following from a report of the National Recreation Association, which shows: '*Vice and Recreation*—Extensive studies and investigation disclosed that 95% of all offenders brought before the courts of the country had no opportunity as children for wholesome recreation, that they had not been reached or influenced by any organized program for boys and girls; and that the first offense in every instance had been due to lack of proper supervision for leisure

time. This condition was especially noticeable in the slums of larger cities, where children were forced to play in the streets, and that these children, as products of the streets, furnished splendid material as recruits for organized gangs and racketeers. *Delinquency and Recreation*—Studies made in several of the larger cities of the United States have shown that juvenile delinquency increases in direct proportion to the distance from organized playgrounds. It is an obvious fact that a normal boy or girl will select an opportunity for wholesome play under wholesome conditions if this opportunity is afforded.' Warden Lawes, in his book, '20,000 Years in Sing Sing,' says: 'In the last analysis, if there is to be any permanent diminution of crime, we shall have to look to our adolescents, . . . educators and social workers know from actual experience that juvenile delinquency gives way before supervised playgrounds and well organized boys and kindred organizations.' "

The record discloses that Durham has a large industrial population. There are 12,470 children enrolled in the public schools. There are 12,700 industrial workers. These industrial workers—bread winners— are no doubt unable to leave the crowded city, for lack of means and perhaps sufficient vacation, to go away with their families for recreation in the pursuit of health. It has been said that "Health is wealth." These parks and playgrounds at all times, and especially in the heat of summer, are a blessing and benediction to them and to the children, and to all the inhabitants of the city. Nothing is more conducive to health and good morals than these recreational places in a thickly settled city. The great weight of authority is to the effect that they are a public necessity.

For the reasons given, the judgment of the court below is
Affirmed.