W. E. BONEY, on Behalf of Himself and All Other Citizens and Tax-payers of the CITY OF KINSTON, NORTH CAROLINA, v. BOARD OF TRUSTEES OF KINSTON GRADED SCHOOLS, a Body Politic and Corporate and Created Under the Provisions of Chapter 96 of the Public Laws of North Carolina of 1899; the CITY OF KINSTON, a Municipal Corporation; the BOARD OF ALDERMEN OF THE CITY OF KINSTON; and GUY ELLIOTT, Mayor.

(Filed 4 June, 1948.)

**1. Schools § 9e—**

Article IX, sec. 5, of the N. C. Constitution sets apart school property and revenue for the support of the public school system and proscribes the diversion of such property and revenue to any other purpose.

**2. Same—**

The maintenance of an athletic field and playground is a proper use of school funds, since physical training is a legitimate function of education.

**3. Constitutional Law § 10b—**

Reasonable doubt as to the constitutionality of a legislative enactment is to be resolved in favor of the lawful exercise of their power by the representatives of the people.

**4. Schools § 9e—Transfer of school property to coterminous municipality held not diversion in view of statutory and contractual obligation that property be used for school athletics.**

Under legislative sanction (Chap. 544, Session Laws of 1947) a graded school district entered into an agreement with a municipality whose boundaries were practically coterminous, under which the district, without monetary consideration, was to transfer in fee to the municipality a tract of school property used as a playground, and the municipality was to construct thereon an athletic stadium and grant the graded schools of the district free and unlimited use of the stadium and grounds during the school term except when required for regularly scheduled games of a professional baseball association. *Held:* The transfer of the property by the district is based upon a valuable consideration, and since the rights of school children to use the stadium are superior to those of the citizens of the municipality in general, and school use is unlimited except for the unimportant restriction, the transfer does not constitute a diversion of school property in contravention of Article IX, sec. 5, of the N. C. Constitution. Further, provision of the act that rules and regulations governing the time and use of the stadium should be promulgated by joint resolution of the municipal and the school board does not alter this result. since the right of the graded schools to use the property can be safeguarded by the school board, and such use is protected by the agreement, the statute and the right to resort to the courts.

APPEAL by plaintiff from *Stevens, J.,* in Chambers, 9 February, 1948, in action in the Superior Court of Lenoir County.

The Board of Trustees of the Kinston Graded Schools is a body politic and corporate charged with the public duty of providing an adequate public school system for children residing in the Kinston Graded School District, a political subdivision of the State. The boundaries of this school district are practically conterminable with those of the City of Kinston, a municipal corporation of Lenoir County.

The Board of Trustees of the Kinston Graded Schools is the owner in fee simple of a tract of land situated near the Kinston High School in the City of Kinston, which it bought in 1937 from Mrs. Sadie Grainger Pierce for $8,500. For convenience of narration this land is hereafter called the Pierce property. The Board of Trustees purchased this property for an athletic field and playground for the children attending the Kinston Graded Schools. Ever since its acquisition, it has been used for such purpose. But during these times, the Board of Trustees of the Kinston Graded Schools has been, and still is, without funds with which to construct on this land an athletic stadium required to meet the reasonable athletic and recreational needs of the Kinston Graded Schools. Consequently, the property is virtually unimproved. It will not be expedient for some years for the Kinston Graded Schools to undertake to borrow money for the erection of the needed stadium because "such course would hamper the construction of necessary additional school buildings."

The General Assembly of 1947 enacted two statutes bearing directly upon the matter in controversy. By chapter 397 of the Session Laws of 1947, the Legislature authorized the City of Kinston to erect and maintain an athletic stadium "upon lands owned by it and forming a part of its system of public parks," and to issue its bonds in a principal amount not exceeding $150,000 to defray the cost of constructing such stadium, and to levy a tax for paying the principal and interest on such bonds, in case such action on its part was first "approved by a majority of the qualified voters of the City of Kinston at a special election" called by its Council. By chapter 544 of the Session Laws of 1947, the General Assembly empowered the Board of Trustees of the Kinston Graded Schools to convey the Pierce property to the City of Kinston in fee simple and without monetary consideration as "a part of the system of parks of the City of Kinston" and as the site for the projected athletic stadium in the event the proposal to issue bonds for the erection of the stadium was first approved by the qualified voters of the City of Kinston at the special election held under chapter 397 of the Session Laws of 1947, and in the further event that a written agreement was first entered into between the Board of Trustees of the Kinston Graded Schools and the City of Kinston making the athletic stadium and the Pierce land

available without charge "for all reasonable use by the Kinston Graded Schools for athletic and recreational purposes."

On 28 October, 1947, the special election was conducted in the City of Kinston in conformity to chapter 397 of the Session Laws of 1947. At this election, an overwhelming majority of the qualified voters of the City of Kinston cast their ballots in favor of the proposition to authorize the City of Kinston to erect and maintain an athletic stadium "upon lands owned by it and forming a part of its system of public parks," and to issue its bonds in a principal amount not exceeding $150,000 to defray the cost of erecting such stadium, and to levy a tax for paying the principal and interest on such bonds.

After the result of the special election had been duly determined and declared, the Board of Trustees of the Kinston Graded Schools and the City of Kinston undertook to carry out a written agreement made by them in pursuance of the provisions of chapter 544 of the Session Laws of 1947 to effectuate the statutory purpose of making the contemplated stadium and the Pierce property available without charge "for all reasonable use by the Kinston Graded Schools for athletic and recreational purposes." By this contract, the Board of Trustees of the Kinston Graded Schools bound itself to convey the Pierce land to the City of Kinston in fee simple and without monetary consideration to the end that it might become a part of the system of public parks of the City of Kinston and to the further end that it might be used as the site of the proposed athletic stadium. The City of Kinston obligated itself by this agreement to build and maintain the projected stadium on the Pierce property at its own expense, and to permit the Kinston Graded Schools to use such stadium and its site "without rent or other charge therefor, during the time from the beginning until the end of each respective school term, for athletic, instructional, and recreational purposes, when such use shall not conflict or interfere with regularly scheduled games of professional baseball played in connection with the activities of a professional baseball association holding a lease upon said stadium and grounds" from the City of Kinston. The City of Kinston further bound itself by its contract with the Board of Trustees of the Kinston Graded Schools to reconvey the Pierce land to such Board of Trustees in fee simple and without monetary consideration in case the proposed stadium is destroyed by fire or other casualty and the City of Kinston fails for a period of five years to make a new stadium "available for the use of the Kinston Graded Schools as provided in this agreement."

W. E. Boney, a taxpaying resident of the City of Kinston and of the Kinston Graded School District, brought this action against the Board of Trustees of the Kinston Graded Schools, the City of Kinston, the Board of Aldermen of the City of Kinston, and Guy Elliott, the Mayor of the City of Kinston, alleging that the written agreement between the

city and the school trustees is void in law because chapter 544 of the Session Laws of 1947 contravenes Article IX, Section 5, of the North Carolina Constitution, and asking a perpetual injunction against the defendants to prevent the proposed conveyance of the Pierce property to the City of Kinston and to prevent the City of Kinston from constructing the contemplated athletic stadium on such property.

Upon application of the plaintiff, a temporary restraining order was issued, and a notice to show cause why an injunction should not be granted as prayed was served on the defendants. On the return day, Judge Stevens heard the testimony of the parties, found that the right of the Kinston Graded Schools to use the proposed stadium without charge constituted "full and adequate value for the conveyance of the land," concluded that chapter 544 of the Session Laws of 1947 is a valid exercise of legislative power, and rendered judgment dissolving the restraining order and dismissing the action. The plaintiff thereupon appealed.

*H. P. Whitehurst and R. E. Whitehurst for plaintiff, appellant.*

*R. A. Whitaker, F. E. Wallace, and George B. Greene for defendants, appellees.*

ERVIN, J. It will conduce to clarity of understanding to note and emphasize at the outset that the issuance of the bonds and the imposition of the tax mentioned in chapter 397 of the Session Laws of 1947 will not impinge upon the inhibition of Article VII, Section 7, of our Constitution because they have been expressly sanctioned by a vote of the majority of the qualified voters of the City of Kinston. Moreover, the plaintiff properly concedes that the establishment and maintenance of an athletic stadium for use "in connection with the athletic activities of the city's public park system" constitutes a public purpose within the meaning of Article V, Section 3, of our organic law prescribing that "taxes shall be levied only for public purposes." *Nash v. Tarboro,* 227 N. C., 283, 42 S. E. (2d), 209; *Atkins v. Durham,* 210 N. C., 295, 186 S. E., 330; *Adams v. Durham,* 189 N. C., 232, 126 S. E., 611; 173 A. L. R., 415. Since the validity of the proposed lease of the projected athletic stadium by the City of Kinston to some professional baseball association is not put directly in issue in this action, we resist the temptation to consider that matter, and refrain from expressing any opinion in regard to it.

The case at bar presents this precise problem for solution: Does chapter 544 of the Session Laws of 1947 authorizing the Board of Trustees of the Kinston Graded Schools to convey the Pierce property to the City of Kinston in fee simple and without monetary consideration for use as a part of the system of public parks of the City of Kinston and as the site for the contemplated athletic stadium conflict

with the provision of Article IX, Section 5, of the North Carolina Constitution that "all moneys, stocks, bonds, and other property belonging to a county school fund . . . shall be faithfully appropriated for establishing and maintaining free public schools in the several counties" of the State?

None of the former decisions of this Court interpreting this constitutional provision involved any question similar to that raised by the present record. *Carter v. R. R.*, 126 N. C., 437, 36 S. E., 14; *Board of Education v. Henderson*, 126 N. C., 689, 36 S. E., 158; *Bearden v. Fullam*, 129 N. C., 477, 40 S. E., 204; *S. v. Maultsby*, 139 N. C., 583, 51 S. E., 956; *In re Wiggins*, 171 N. C., 372, 88 S. E., 508; *Board of Education v. High Point*, 213 N. C., 636, 197 S. E., 191. So we must glean its meaning from the words in which it is couched.

It is manifest that Article IX, Section 5, of the Constitution was designed in its entirety to secure two wise ends, namely: (1) To set apart the property and revenue specified therein for the support of the public school system; and (2) to prevent the diversion of public school property and revenue from their intended use to other purposes.

The Pierce property was bought by the public school authorities with public school funds. It has hitherto been set apart by these authorities for the use of the children attending the Kinston Graded Schools as an athletic field and playground. Without doubt, this is a proper public school use, for physical training is a legitimate function of education. We affirm the soundness of the concept of education expressed by the Montana Supreme Court in this language: "By its voluntary act, the state has assumed the function of education primarily resting upon the parents, and by laws on compulsory education has decreed that the custody of children be yielded to the state during the major portion of their waking hours for five days a week, and, usually, nine months in the year. In doing so, the state is not actuated by motives of philanthropy or charity, but for the good of the state, and, for what it expends on education, it expects substantial returns in good citizenship. With this fact in mind, it is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship—the good citizen, the man or woman who is of the greatest value to the state, is the one whose every faculty is developed and alert. Education may be particularly directed to either mental, moral, or physical powers or faculties, but in its broadest and best sense it embraces them all." *McNair v. School District No. 1 of Cascade County*, 87 Mont., 423, 288 P., 188, 69 A. L. R., 866.

This case provokes a judicial regret that practical considerations sometimes prevent the lawmakers from legislating upon the theory that a straight line is the shortest distance between two points in law as well

as in geometry. Assuredly, nothing in our Constitution denies to the General Assembly power to enact appropriate statutes authorizing a legally established public school district to issue bonds or to levy taxes for the establishment and maintenance of an athletic stadium for its students upon land owned and controlled by it when authorized so to do by a vote of the majority of the qualified voters in the school district. N. C. Const., Art. VII, sec. 7; 47 Am. Jur., Schools, sec. 75.

Here, however, the Legislature shunned any attempt to satisfy the needs of the Kinston Graded Schools for an adequate athletic stadium for the use of its students by direct means because of a desire to "serve the needs of both the City of Kinston and the Kinston Graded Schools" and because of a fear that imposing a debt for such purpose upon the taxpayers and property of the school district might later "hamper the construction of necessary additional school buildings" in the school district. But it has authorized virtually the same voters in approximately the same territory to impose such a debt upon practically the same taxpayers and property by issuing bonds and levying taxes for substantially the same purpose in the name of the City of Kinston, another political subdivision of the State. The consummation of the legislative plan contemplates that the Board of Trustees of the Kinston Graded Schools shall convey its athletic field and playground to the City of Kinston in fee simple and without monetary consideration, and that the City of Kinston shall devote such property to use as a part of its system of public parks and as the site of the proposed athletic stadium.

This indirect approach to the problem has given rise to the somewhat perplexing question as to whether chapter 544 of the Session Laws of 1947 authorizing the Board of Trustees to convey the land at issue to the City of Kinston for these purposes infringes upon Article IX, Section 5, of the Constitution by permitting school property to be diverted from its intended use to other objects.

The task of judging the validity of this statute must be performed in the light of the established principle that any reasonable doubt as to the constitutionality of a legislative enactment is to be resolved in favor of the lawful exercise of their power by the representatives of the people. *Glenn v. Board of Education*, 210 N. C., 525, 187 S. E., 781; *Albertson v. Albertson*, 207 N. C., 547, 178 S. E., 352. When chapter 544 of the Session Laws of 1947 is tested by this cardinal rule of construction, it can be said that the supposed diversion of the school property is apparent rather than real, and that the statute harmonizes with the constitutional provision here considered.

The proposed conveyance will divest the Board of Trustees of the Kinston Graded Schools of its legal title to the Pierce property, but it will not result in any substantial diversion of the land from its intended use for athletic purposes by the children attending the Kinston Graded

Schools. This is so because the statute stipulates that the proposed stadium and its site shall be subject to "all reasonable use by the Kinston Graded Schools for athletic and recreational purposes," and because the written agreement between the school trustees and the City of Kinston provides that the Kinston Graded Schools shall have free and unlimited use of the projected stadium and the grounds during the school term, except when the same are required for use by a professional baseball association in connection with the playing of its regularly scheduled games. As most of these baseball games will be played during school vacation, this restriction upon the use of the stadium and grounds by the Kinston Graded Schools seems unimportant.

When all is said, the Kinston Graded Schools are exchanging a practically unimproved $8,500 tract of land for the right to the substantial use of a $150,000 stadium. Hence, the contemplated conveyance is based upon a valuable consideration. *Institute v. Mebane,* 165 N. C., 644, 81 S. E., 1020. The correctness of this observation is not affected by the fact that virtually all of the school children in question are citizens of the City of Kinston for the statute and the contract confer upon such children rights superior to those enjoyed by the citizens of the municipality in general.

In conclusion, we wish to observe that the right of the Kinston Graded Schools to use the Pierce property and the stadium to be erected by the City of Kinston thereon is not rendered illusory in a legal sense because section 2 of chapter 544 of the Session Laws of 1947 provides that "the rules and regulations governing the time and use of such athletic stadium and grounds by the Kinston Graded Schools" shall be promulgated and enforced "by a joint resolution passed by a majority in number of the members of each board." This is true because the statute makes it plain that the right of the Kinston Graded Schools to the reasonable use of the projected stadium and its site shall be unlimited in time, and because the written agreement between the school trustees and the City of Kinston given legislative efficacy by the statute spells out in detail the right of the Kinston Graded Schools to the free use of the stadium and its site. Certainly, this agreement cannot be altered, and rules and regulations inconsistent with it cannot be promulgated without the consent of a majority of the members of the Board of Trustees of the Kinston Graded Schools. It necessarily follows that plenary power rests in the school trustees to protect their rights in the premises. Moreover, the written agreement specifies that the land is to be reconveyed to the school trustees in the eventuality that the proposed stadium is destroyed by fire or other casualty and another stadium is not made available to the Kinston Graded Schools by the City of Kinston. Besides, the courts will always be open to prevent any unconstitutional diversion of the right of the Kinston Graded Schools to the use of the property in question.

For the reasons given, the judgment rendered in the court below is Affirmed.