EVERETT SMITH, Administrator of DONALD H. SMITH, v. C. F. HEFNER, R. M. GALLOWAY, Sr., J. P. GIBBONS, Jr., NORA L. HATCHER, MARY M. KING, and WILLIAM A. PEGRAM, Trustees of the HAMLET CITY SCHOOL ADMINISTRATIVE UNIT OF RICHMOND COUNTY; DR. R. B. GARRISON, E. B. GUNTER, H. M. KYSER, and W. L. HALTIWANGER, Trustees and/or Commissioners and/or Committee of the HAMLET MEMORIAL PARK COMMISSION; HAMLET RAILERS, INC.; JOHNNY WHITLOCK; and SAM JOHNSON.

(Filed 1 February, 1952.)

1. **State § 3—**

   Neither the State nor its political subdivisions which exercise statutory governmental functions may be sued unless authorized by statute.

2. **Schools § 11b—**

   Trustees of a school administrative unit may not be sued in tort, there being no statutory authority therefor, G.S. 115-8, G.S. 115-56. *Semble:* An administrative school unit may not be held liable for torts committed by its employees or trustees.

3. **Public Officers § 8—**

   In the performance of governmental duties involving the exercise of judgment and discretion, a public official is clothed with immunity for mere negligence, and may be held liable only if his act or failure to act is corrupt or malicious or if he acts beyond the scope of his duties.

4. **Same—**

   While an employee, as distinguished from a public official, may be held liable individually for negligence in the performance of his duties, such negligence may not be imputed to the employer on the principle of *respondeat superior* when the employer is clothed with governmental immunity.

**5. Schools § 5f—**

>   Park commissioners and school trustees of a city administrative unit
>   act within their authority in providing an athletic field for games and
>   exhibitions, with grandstand and other seating facilities, since an athletic
>   field is an essential part of the physical plant of a well integrated school
>   unit, and they may also rent such field for the benefit of the unit when the
>   primary use of the field is reserved for school purposes.

**6. Schools § 4d: Public Officers § 8—**

>   Park commissioners and school trustees of a city administrative unit
>   may not be held individually liable for negligent injury to a patron at a
>   baseball game occurring while the school athletic field was rented to a
>   league baseball club, there being no allegations that their conduct was
>   either corrupt or malicious, and it appearing that they were acting in the
>   scope of their duties and were therefore clothed with governmental im-
>   munity.

APPEAL by plaintiff from *Clement, J.,* June Term, 1951, of RICHMOND.

Civil action by plaintiff to recover damages for the alleged wrongful
death of his intestate caused by the fall of a stack of cement blocks piled
near .where he was sitting as a spectator at a league baseball game.   The
case was heard below on demurrers filed by some of the defendants for
failure of the complaint to state facts sufficient to constitute a cause of
action as to them.

The defendants, as named in the complaint and served with summons,
are as follows: (1) "C. F. Hefner, R. M. Galloway, Sr., J. P. Gibbons,
Jr., Nora L. Hatcher, Mary M. King, and William A. Pegram, Trustees
of the Hamlet City School Administrative Unit of Richmond County,"—
hereinafter referred to as School Trustees; (2) "Dr. R. B. Garrison,
E. B. Gunter, H. M. Kyser, and W. L. Haltiwanger, Trustees and/or
Commissioners and/or Committee of the Hamlet Memorial Park Com-
mission,"—hereinafter referred to as Park Commissioners; (3) "Ham-
let Railers, Inc.,"—hereinafter referred to as League Baseball Club; (4)
"Johnny Whitlock"; and (5) "Sam Johnson."

The pertinent allegations of the complaint may be summarized as
follows:

1. That the School Trustees hold title to the athletic field where the
intestate was fatally injured; that in furtherance of a mutual desire to
improve the facilities of the athletic field and for the purpose of better
promoting games and sports therein, the Park Commissioners had joined
with the School Trustees and the League Baseball Club in building a
cement-block wall around the entire athletic field; and at the time of
the injury sued on, in order further to develop the property and make
it more usable for games and exhibitions, these defendants were engaged
in erecting a cement-block grandstand within the walls of the park area,
with the Park Commissioners being "in charge and management of the

construction thereof." That the grandstand was being built in order to facilitate the "charging of admission to such games and plays as were from time to time staged in said park, and for revenue purposes and to increase the revenue therefrom."

2. That on or about March 13, 1950, the Park Commissioners, in furtherance of the mutual "plan, scheme and enterprise" of developing the athletic field for games and exhibitions "for itself and the owners of the park lands, rented or leased" the athletic field to the League Baseball Club "for a monetary consideration and for profit and gain," to be used by the ball club in furnishing entertainment for which admission fees would be charged.

3. That "sometime prior to April 26, 1950 the defendants herein (School Trustees, Park Commissioners, and League Baseball Club), acting as a committee, trustees and commissioners as aforesaid, and in their individual capacity, employed the defendant, Johnny Whitlock, to build the grandstand against the cement wall, . . . and the same had been commenced, and was in the process of construction with the foundation laid, and . . . Johnny Whitlock was an employee, employed by the other defendants hereinbefore named";

4. "That Sam Johnson was the owner of a truck, and operated the same for hire, and the other defendants hereinbefore named, employed . . . Sam Johnson to haul and place on . . . lands, cement blocks to be used by the defendants in the construction of said grandstand in said park, and . . . Sam Johnson was employed by the defendants for such purpose, and at the times herein set out was an employee and servant of said defendants above named."

5. "That . . . Sam Johnson hauled a large number of cement blocks, and the defendants hereinbefore named showed him where to place them, and . . . Sam Johnson placed said cement blocks . . . where he was shown by the defendants aforesaid, or some of them who were acting for and on behalf of all of the defendants and all of the groups herein named as defendants, and the said defendants selected the place where said cement blocks should be stacked, on a hillside, adjacent to the cement wall theretofore erected around the . . . ball park, and directed . . . Sam Johnson to stack them on the incline, or hillside, adjacent to the . . . cement wall on the outside of said park."

6. That the place selected by the defendants, where they directed Sam Johnson to stack the cement blocks, was adjacent to or near the cement wall, on the outside of the park and directly opposite the space on the inside where the patrons and spectators sat in viewing games in the park.

7. That Sam Johnson, pursuant to the orders and directions of the defendants, stacked a large number of cement blocks on the hillside adjacent to and just outside of the cement wall, near where spectators sat on the inside of the wall in viewing games and exhibitions, and he, in

piling the cement blocks, stacked them in high piles near the wall, adjacent to and extending above the level of the wall, and in a careening position with the contour of the incline or hill.

8. "That the defendants, their agents and employees negligently and carelessly selected said place, and carelessly and negligently caused said cement blocks to be stacked at said place, on said incline and hillside, . . . leaning toward said wall in high stacks or piles, and carelessly and negligently left the same there for a considerable period," that they knew or "should have known at the time of the selection of the . . . place, and at the time of the stacking of said cement blocks on said hillside adjacent to said wall, and adjacent to the place where the guests, patrons and spectators visiting said ball park sat and used to see said games . . . it was dangerous and hazardous, and they knew, or should have known, that stacks or piles as high as they were, and in the way and manner said cement blocks were stacked or piled, . . . they were dangerous and would fall, and created a hazard and a dangerous place to the patrons, guests and spectators at said games, plays, or exhibitions."

9. That on the night of 26 April, 1950, the League Baseball Club played a game of baseball "in said park, and it was advertised and large crowds gathered and paid admissions to see the same, and at said time, said defendant, as well as the other defendants, well knew, or should have known, that said cement blocks were stacked in a dangerous way and manner . . . (as previously described) . . . and notwithstanding this knowledge, said defendant, as well as its co-defendants carelessly and negligently permitted and allowed the patrons, guests and spectators who had paid . . . admission fee(s) to see said game, to sit and use the space against or near said cement wall, on the outside of which, and leaning toward it were the high stacks and piles of cement blocks."

10. "That on the night of April 26, 1950 the plaintiff's intestate bought a ticket and went into said park to see said game, . . . and with the other spectators sat near the cement wall of said park, while directly outside and adjacent thereto, said . . . piles of cement blocks were stacked, and while he was thus engaged in looking at . . . said game, the . . . stack of cement blocks theretofore carelessly and negligently placed on the outside of said wall . . . fell against the . . . cement wall, crushing it to the ground and causing the cement wall and the stacks and piles of cement blocks to fall upon the plaintiff's intestate and badly crushed, bruised and mangled his body in such . . . manner that he was critically injured and died a short time thereafter."

11. That the intestate's death was caused solely by the negligent acts and conduct of the defendants (1) in selecting as the place to pile the cement blocks a dangerous site on a hillside adjacent to the place where the spectators sat; (2) in so stacking the blocks "in a careening position in high piles, . . . thus creating a dangerous and hazardous place"; (3)

in allowing the cement blocks to remain in such dangerous position; (4) in permitting spectators attending the games "to sit at, against, or near" the hazard thus created; and (5) in failing to provide the intestate a safe place at which to sit and view the game.

12. That by reason of the intestate's death, due to the defendants' negligence as alleged, "the plaintiff has been damaged . . . in the sum of $100,000," and "has instituted this action within one year from the date of the death of the plaintiff's intestate."

Demurrers to the complaint, for failure to state facts sufficient to constitute a cause of action, were filed (1) by the School Trustees, both as trustees and as individuals; and (2) by the members of the Park Commission, both in their representative capacities and as individuals.

At the hearing the trial judge sustained the demurrers of the School Trustees, both as trustees and as individuals. The judge also sustained the demurrer of the members of the Park Commission interposed in their individual capacities, but overruled the demurrer filed by them in their representative capacities.

From these adverse rulings, discharging the Park Commissioners as individuals and the School Trustees, both as trustees and as individuals, the plaintiff appealed to this Court, assigning errors.

*George S. Steele and Gavin, Jackson & Gavin for plaintiff, appellant.*
*Bynum & Bynum for defendants, appellees.*

JOHNSON, J. The statutory machinery for the operation of the public school system of this State is codified in Chapter 115 of the General Statutes of North Carolina.

G.S. 115-8 sets up two coordinate classes of local administrative units: (1) county units and (2) city administrative units. By the provisions of this statute each county of the State is designated a county administrative unit, the schools of which, except in city administrative units, are placed under the general supervision and control of a county board of education with a county superintendent as the administrative officer. The statute defines a city administrative unit as an area, within a county, comprising a school population of 1,000 or more, which has been or may be approved by the State Board of Education as such unit for the purposes of school administration. The statute also places the general administration and supervision of a city administrative unit under the control of a board of trustees or school commissioners with a city superintendent as the administrative officer.

G.S. 115-56 confers upon county boards of education, subject to paramount powers vested in the State Board of Education or other authorized agencies, general powers of control and supervision over the operation of the public schools in their respective counties, except in respect to city

administrative units which by the provisions of G.S. 115-352 as amended (1951 Cumulative Supplement) are required to be dealt with by the state school authorities in all matters of school administration independent of and in the same manner as are county administrative units. See also G.S. 115-352; G.S. 115-353; G.S. 115-77; G.S. 115-81; and G.S. 115-82.

By the provisions of G.S. 115-45 the board of education of each county is constituted a body corporate and made "capable of . . . prosecuting and defending suits for or against the corporation."

However, our examination of the statutory machinery governing the operation of the public school system of the State (G.S. 115-1 through G.S. 115-394 and the amendments thereto) reveals no reference to any statutory right to sue the trustees of a city administrative school unit.

It is an established principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit. *Schloss v. Highway Commission,* 230 N.C. 489, 53 S.E. 2d 517; *Dalton v. Highway Commission,* 223 N.C. 406, 27 S.E. 2d 1; *Prudential Insurance Co. v. Powell,* 217 N.C. 495, 8 S.E. 2d 619; *Rotan v. State,* 195 N.C. 291, 141 S.E. 733; *Dredging Co. v. State,* 191 N.C. 243, 131 S.E. 665; *Carpenter v. Railway Co.,* 184 N.C. 400, 114 S.E. 693; 49 Am. Jur., States, Territories, and Dependencies, Sec. 91; Annotations: 42 A.L.R. 1464, 50 A.L.R. 1408.

By application of this principle, a subordinate division of the state, or agency exercising statutory governmental functions like a city administrative school unit, may be sued only when and as authorized by statute. *Kirby v. Board of Education,* 230 N.C. 619, 55 S.E. 2d 322; *Wallace v. Trustees,* 84 N.C. 164; *Smith v. School Trustees,* 141 N.C. 143 (mid. p. 153), 53 S.E. 524; *Burgin v. Smith,* 151 N.C. 561 (mid. p. 567), 66 S.E. 607; *Jones v. Commissioners,* 130 N.C. 451 (mid. p. 452), 42 S.E. 144; *Moody v. State Prison,* 128 N.C. 12, 38 S.E. 131. See also McIntosh, North Carolina Practice and Procedure, p. 229.

It follows, therefore, that since there has been no statutory removal of the common law immunity from suit of the Trustees of the Hamlet City School Administrative Unit, the demurrer interposed by them as such trustees was properly sustained by Judge Clement.

Accordingly, we do not reach for decision the question, discussed in the briefs, as to whether, assuming the existence of general authority to sue a local agency of government like a city administrative school unit, such authority would extend only to such actions as are essentially incidental to the operation of the agency, and exclude causes of action sounding in tort. Suffice it to say, the decided weight of authority supports the view that an administrative school unit or school district may not be held liable for torts committed by its trustees or employees. *Benton v. Board of*

*Education,* 201 N.C. 653, 161 S.E. 96; 47 Am. Jur., Schools, Sec. 56; Annotation: 160 A.L.R. 7, pp. 17, 37, 38 and 40.

We come now to review the action of the court below in sustaining the demurrer interposed by the School Trustees and Park Commissioners as individuals.

It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious (*Miller v. Jones,* 224 N.C. 783, 32 S.E. 2d 594; *Hipp v. Ferrall,* 173 N.C. 167, 91 S.E. 831; *Templeton v. Beard,* 159 N.C. 63, 74 S.E. 735), or that he acted outside of and beyond the scope of his duties. *Gurganious v. Simpson,* 213 N.C. 613, 197 S.E. 163. And, while an employee of an agency of government, as distinguished from a public official, is generally held individually liable for negligence in the performance of his duties, nevertheless such negligence may not be imputed to the employer on the principle of *respondeat superior,* when such employer is clothed with governmental immunity. *Miller v. Jones, supra.* See also 23 N.C.L.R., p. 270 *et seq.*

In the instant case the School Trustees and Park Commissioners were engaged in official, administrative acts involving the exercise of discretion at the times laid in the complaint. It is not alleged that their conduct was either corrupt or malicious. Nor does it appear that they were acting beyond the scope of their duties as such trustees and commissioners. Under the modern concept of public education, which recognizes the necessity of ministering to the physical as well as the mental needs of school children, an athletic field for games and exhibitions, with grandstand or other seating facility, is an essential part of the physical plant of a well integrated school unit. This being so, the action of the School Trustees and Park Commissioners in providing for the erection of a grandstand may not be treated as an activity beyond the scope of their duties as such public officials. Nor is their position rendered less immune from liability by reason of the fact that the athletic field had been leased "for a monetary consideration and for profit and gain." Here, it is observed (as part of the allegations of the complaint), that in leasing the field to the League Baseball Club, the parties "reserved for the benefit of the Hamlet City School Administrative Unit . . . the use of said park and first-refusal to its use, and it was agreed that the . . . Baseball Club should check with the parties . . . and work out a schedule to avoid a conflict in games, plays and exhibitions." See *Boney v. Kinston Graded Schools,* 229 N.C. 136, 48 S.E. 2d 56.

It thus appears that in leasing the athletic field to the League Baseball Club so as to provide monetary benefits for the City Administrative

School Unit, the School Trustees and Park Commissioners nevertheless reserved the primary use of the field for the school children and their sports activities. Accordingly, the action of these officials in so leasing the athletic field may not be interpreted as abridging their ordinary governmental immunity from suit.

It follows, therefore, that the court below properly sustained the demurrer interposed by the School Trustees and Park Commissioners in their individual capacities.

The judgment below is

Affirmed.