NORTH CAROLINA SCHOOL BOARDS ASSOCIATION; WAKE COUNTY BOARD OF EDUCATION; DURHAM PUBLIC SCHOOLS BOARD OF EDUCATION; JOHNSTON COUNTY BOARD OF EDUCATION; BUNCOMBE COUNTY BOARD OF EDUCATION; EDGECOMBE COUNTY BOARD OF EDUCATION; AND LENOIR COUNTY BOARD OF EDUCATION, PLAINTIFFS v. RICHARD H. MOORE, STATE TREASURER; ROBERT POWELL, STATE CONTROLLER; DAVID McCOY, STATE BUDGET OFFICER; PHILLIP J. KIRK, JR., CHAIRMAN OF THE STATE BOARD OF EDUCATION; MICHAEL E. WARD, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION; ROY COOPER, ATTORNEY GENERAL OF NORTH CAROLINA; E. NORRIS TOLSON, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF REVENUE; LYNDO TIPPETT, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; CAROL HOWARD, NORTH CAROLINA COMMISSIONER OF MOTOR VEHICLES; MOLLY CORBETT BROAD, PRESIDENT OF THE UNIVERSITY OF NORTH CAROLINA; JAMES MOESER, CHANCELLOR OF THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL; MARYE ANNE FOX, CHANCELLOR OF NORTH CAROLINA STATE UNIVERSITY AT RALEIGH; WILLIAM G. ROSS, JR., SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES; JIM FAIN, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF COMMERCE; CARMEN HOOKER BUELL, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES; L. THOMAS LUNSFORD, II, EXECUTIVE DIRECTOR OF THE NORTH CAROLINA STATE BAR; RAYMOND W. GOODMAN, JR., CHAIRMAN OF THE NORTH CAROLINA EMPLOYMENT SECURITY COMMISSION; SANDRA O'BRIEN, EXECUTIVE SECRETARY OF THE NORTH CAROLINA BOARD OF EXAMINERS OF PLUMBING, HEATING AND FIRE SPRINKLER CONTRACTORS; ROBERT L. BROOKS, EXECUTIVE DIRECTOR OF THE NORTH CAROLINA BOARD OF EXAMINERS OF ELECTRICAL CONTRACTORS; DOUGLAS H. VAN ESSEN, EXECUTIVE SECRETARY OF THE NORTH CAROLINA BOARD OF COSMETIC ART EXAMINERS; EACH OF WHOM IS SUED IN HIS OR HER OFFICIAL CAPACITY ONLY, DEFENDANTS

No. COA02-507

(Filed 16 September 2003)

## 1. Penalties, Fines, and Forfeitures— monies from civil penalties and forfeitures—School Technology Fund—constitutional requirement

Statutes which establish a Civil Penalty Fund for the collection of civil penalties and forfeitures and mandate that the Fund's monies be transferred to a School Technology Fund for allocation to local school districts based on student population are constitutional under N.C. Const. art. IX, § 7, and the trial court erred by granting summary judgment for plaintiffs. The General Assembly properly legislated the details necessary to effectuate a general constitutional provision that revenue from civil penalties be used for public schools. N.C.G.S. §§ 115C-457.1, -457.2, -457.3.

**2. Penalties, Fines, and Forfeitures— remittance to schools— principles for determining**

The North Carolina Supreme Court has articulated principles for determining whether monetary payments to the State are remedial or punitive, in order to determine whether they would fall under the constitutional provision requiring that revenue from civil penalties be used for public schools. These monies must be fines for the breach of criminal laws or the clear proceeds of payments intended to penalize the wrongdoer rather than to compensate a particular party; they must be paid to the State or a department of the State; and the label attached to the payment does not determine its nature.

**3. Penalties, Fines, and Forfeitures— overweight vehicle penalties—remittance to schools**

Overweight vehicle penalties are penal and belong to the public schools because they are intended to penalize the wrongdoer rather than compensate a particular party. N.C.G.S. § 20-118(e).

**4. Penalties, Fines, and Forfeitures— lapse of motor vehicle insurance—remittance to public schools**

Penalties collected from the lapse of motor vehicle insurance are in the nature of sanctions intended to penalize the wrongdoer and belong to the public schools. N.C.G.S. § 20-309(e).

**5. Taxation— prohibition on lawsuits to prevent—action to determine use of payments for late fees**

The statute that prohibits suits against the Secretary of Revenue to prevent the collection of taxes did not apply to a declaratory judgment action to determine whether payments for late filings and other failures to comply with the tax code belong to the public schools. Plaintiffs sought a determination of the proper disposition of the amounts collected, not the prevention of collection.

**6. Penalties, Fines, and Forfeitures— additional taxes— failure to comply with revenue code—not remitted to schools**

Payments collected by the Department of Revenue for failure to comply with the tax code do not belong to the public schools because they are assessed as an additional tax and are remedial rather than punitive in nature.

**7. Penalties, Fines, and Forfeitures— penalties for late unemployment insurance payments—not remitted to public schools**

Amounts collected by the Employment Security Commission for late payments to the Unemployment Insurance Fund are in the nature of additional taxes and are thus remedial rather than punitive, so that those payments do not belong to the public schools. N.C.G.S. § 96-10.

**8. Penalties, Fines, and Forfeitures— penalties for university traffic and parking violations—not remitted to public schools**

Amounts collected by the Consolidated University of North Carolina campuses for traffic and parking violations belong to the public schools when they are characterized as infractions, prosecuted by the local district attorney, and any resulting penalties are imposed and collected by the district court. Other payments do not belong to the schools because they are denominated civil penalties, enforced by civil actions in the nature of debt, intended as compensation for the expense of establishing and maintaining parking and transportation services, and enacted pursuant to an equal constitutional provision. N.C.G.S. § 116-44.4(m); N.C. Const. art. IX, § 8.

**9. Penalties, Fines, and Forfeitures— payment for late returns to university libraries—not remitted to public schools**

Payments collected by the Consolidated University of North Carolina campuses for loss, damage, or late return of library materials are remedial and do not belong to the public schools. The payments are intended to insure the availability of library materials and to compensate the universities for replacing materials, and were enacted pursuant to a constitutional provision that is separate from the public schools provision. N.C.G.S. § 116-33; N.C. Const. art. IX, § 9.

**10. Penalties, Fines, and Forfeitures— unauthorized substance taxes—not remitted to public schools**

Unauthorized substance taxes assessed against drug and illicit liquor dealers do not belong to the public schools because prior panels of the Court of Appeals concluded that the tax is intended for a remedial purpose. N.C.G.S. § 105-113.111.

**11. Penalties, Fines, and Forfeitures— penalties for environ-mental violations—remittance to public schools**

Penalties collected for environmental violations are punitive in nature and belong to the public schools. Monies paid for supplemental environmental project settlements, including payments not made directly to the State, are paid because of a civil penalty against the violator, are punitive in nature, and still belong to the public schools. N.C.G.S. §§ 143-215.6A, 143-215.114A.

**12. Penalties, Fines, and Forfeitures— penalties paid by schools—not remitted to public schools**

Payments made by local public school systems to various state agencies as fines or civil penalties may not be used by the public schools. Otherwise, the offending unit would be unjustly enriched by its own wrongdoing.

**13. Penalties, Fines, and Forfeitures— penalties for late pay-ment of license fees—not remitted to public schools**

Payments collected by certain state agencies for the late payment of occupational license fees did not belong to the public schools because they are intended to compensate the collecting agency for additional operating expenses incurred in collecting money due or compelling performance of a license requirement. The payments are remedial rather than punitive in nature.

**14. Statutes of Limitation and Repose— fines and penalties—remittance to schools**

The trial court correctly applied the three-year statute of limitations of N.C.G.S. § 1-52 to an action by local school boards to recover payments already collected by the State which the schools claimed were due them under the State constitution. The one-year statute of limitations of N.C.G.S. § 1-54(2) is applicable to actions intended to collect civil penalties or forfeitures.

Judge HUNTER concurring in part and dissenting in part.

Appeal by defendants from judgment entered 14 December 2001 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 11 March 2003.

*Tharrington Smith, L.L.P., by Michael Crowell and Kara L. Grice; Wallace, Morris & Barwick, P.A., by Edwin M. Braswell, Jr.; and Roberts & Stevens, P.A., by Cynthia Grady, for plaintiffs appellees.*

*Attorney General Roy Cooper, by Special Deputy Attorney General W. Dale Talbert and Assistant Attorney General Celia Grasty Lata, for defendants appellants Moore, Powell, McCoy, Kirk, Ward, Cooper, Tolson, Tippett, Howard, Broad, Moeser, Fox, Ross, Fain, Buell, Lunsford, Goodman, and Van Essen.*

*Young Moore and Henderson, P.A., by John N. Fountain and Reed N. Fountain, for defendants appellants O'Brien and Brooks.*

*Allen and Pinnix, P.A., by Noel L. Allen, for the North Carolina Board of Architecture and the North Carolina State Board of Mortuary Science, amici curiae.*

*Bailey & Dixon, L.L.P., by Carson Carmichael, III, for the North Carolina Licensing Board for General Contractors and the North Carolina Board of Pharmacy, amici curiae.*

ELMORE, Judge.

This appeal arises from the State of North Carolina's attempts to direct the collection and distribution of civil fines and penalties within the constitutional mandate of Article IX, Section 7 of the North Carolina Constitution, which provides in pertinent part as follows:

> [T]he clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

N.C. Const. art. IX, § 7. Plaintiff North Carolina School Boards Association, an incorporated association representing all county and city school boards in the state, is joined in this appeal by the individual Boards of Education for Wake, Durham, Johnston, Buncombe, Edgecombe, and Lenoir counties, which are the governing bodies for the public schools in their respective counties. Defendants[1] are, as of

---

1. Each defendant is sued in his or her official capacity only. By Judge Jones' Order Substituting Parties entered 14 December 2001 the following defendants were substituted, pursuant to N.C.R. Civ. P. 25(f), as parties for their originally named predecessors who have died, resigned, or otherwise vacated their offices during the pendency of this litigation: defendant Moore for Harlan E. Boyles as State Treasurer; defendant Powell for Edward Renfrow as State Controller; defendant McCoy for Marvin K. Dorman, Jr. as State Budget Officer; defendant Cooper for Mike Easley as Attorney General; defendant Tolson for Muriel K. Offerman as Secretary of the Department of Revenue; defendant Tippett for E. Norris Tolson as Secretary of the

N.C. SCHOOL BDS. ASS'N v. MOORE

[160 N.C. App. 253 (2003)]

14 December 2001, chief executive officers of various State departments, agencies, institutions, and licensing boards, each of which either (1) assesses and collects monetary payments from individuals or entities for failing to comply with certain statutory or administrative requirements, or (2) administers State funds into which these payments are deposited and distributed.

Plaintiffs brought this declaratory judgment action seeking a determination that various monetary payments collected by defendants are "penalties and forfeitures" or "fines collected . . . for . . . breach of the penal laws of the State" belonging to the public schools "in the several counties" under Article IX, Section 7. Defendants contend that none of the challenged payments fall within the purview of Article IX, Section 7 because they are each remedial, rather than punitive, in nature, and that defendants may therefore retain and use the payments for purposes other than maintaining free public schools.

Plaintiffs also seek a determination that Article 31A of Chapter 115C of the North Carolina General Statutes, which requires (1) that "the clear proceeds of all civil penalties . . . collected by a State agency" be deposited into a central Civil Penalty and Forfeiture Fund (Civil Penalty Fund), and (2) that all funds accruing to the Civil Penalty Fund be transferred to the State School Technology Fund (School Technology Fund) for allocation to local school units based on each unit's student population, is unconstitutional and void because it violates the Article IX, Section 7 mandate that all civil penalties "shall belong to and remain in the several counties" and be "used exclusively for maintaining free public schools." Defendants contend that Article 31A of Chapter 115C is consistent with the general provisions of Article IX, Section 7, and therefore constitutional, because it ultimately provides for the distribution of all civil penalties to local school administrative units and directs their use by the State's public schools, albeit for the limited purpose of implementing local school technology plans.

Department of Transportation; defendant Howard for Janice H. Faulkner as Commissioner of Motor Vehicles; defendant Moeser for Michael Hooker as Chancellor of the University of North Carolina at Chapel Hill; defendant Ross for Wayne McDevitt as Secretary of the Department of Environment and Natural Resources; defendant Fain for Rick Carlisle as Secretary of the Department of Commerce; defendant Buell for H. David Bruton as Secretary of the Department of Health and Human Services; defendant Goodman for J. Parker Chesson, Jr. as Chairman of the Employment Security Commission; and defendant O'Brien for T.L. Phillips as Executive Secretary of the North Carolina State Board of Examiners of Plumbing, Heating and Fire Sprinkler Contractors.

Finally, plaintiffs contend that their claims for the clear proceeds of the challenged monetary payments are governed by a three-year statute of limitations, while defendants maintain that, should any of the challenged payments be adjudged civil penalties subject to Article IX, Section 7, a one-year limitations period applies to plaintiffs' claims.

By order entered 14 December 2001, the Honorable Abraham Penn Jones denied defendants' motion for summary judgment and granted summary judgment in plaintiffs' favor on all claims. In ruling for plaintiffs, Judge Jones' order expressly provided that the following monetary payments are each "subject to Article IX, Section 7, of the North Carolina Constitution and belong to and shall be remitted to the public schools[:]"

1. Moneys collected by the Department of Transportation from automobile dealers pursuant to G.S. 20-79(e) for misuse of dealer plates . . . .

2. Moneys collected by the Department of Transportation from the owners and operators of vehicles pursuant to G.S. 20-118(e) for violation of weight limits . . . .

3. Moneys collected by the Department of Transportation from automobile owners pursuant to G.S. 20-309(e) for failure to have financial security in effect and from insurers for failing to give notice of termination . . . .

4. Moneys collected by the Department of Commerce pursuant to G.S. 54-109.15(b) for credit unions' failure to file reports timely . . . .

5. Moneys collected by the Employment Security Commission pursuant to G.S. 96-10 for overdue employer taxes, for the late filing of reports, and for bad checks . . . .

6. Moneys collected by the Department of Revenue pursuant to G.S. 105-113.89, -163.15, -163.41, -164.14, -231 and -236 for late filings and underpayments and failure to comply with statutory or regulatory tax provisions . . . .

7. Moneys collected by the boards of trustees of the campuses of the consolidated University of North Carolina for violation of ordinances adopted by the trustees under the authority of G.S. 116-44.4(h) for the regulation of traffic and parking and the registration of vehicles . . . .

8. Moneys collected by the boards of trustees of the campuses of the consolidated University of North Carolina pursuant to the authority granted by G.S. 116-33 for the late return of materials from the university libraries . . . .

9. Moneys collected by the Department of Health and Human Services pursuant to G.S. 143-116.7 for violations of departmental motor vehicle regulations on the grounds of department institutions . . . .

10. Moneys collected by the Secretary of Revenue pursuant to Article 2D of Chapter 105 of the General Statutes, denominated as the state unauthorized substances excise tax . . . .

11. Monies [sic] paid to support a Supplemental Environmental Project (SEP), in settlement of an assessed civil penalty pursuant to a settlement agreement with the Department of Environment and Natural Resources. . . . Specifically, the $50,125 paid by the City of Kinston to Lenoir Community College on or about 31 March 1998 as a SEP pursuant to a Consent Agreement and Settlement in contested cases 97 EHR1177 and 97 EHR1380 in the Office of Administrative Hearings is subject to Article IX, Section 7 . . . and belongs to and shall be paid by the Department of Environment and Natural Resources to the Lenoir County Board of Education for the public schools of that county.

12. The $80,000 collected by the Department of Environment and Natural Resources from the Department of Transportation as a mitigated penalty in settlement of contested case 98EHR778 in the Office of Administrative Hearings . . . belongs to and shall be paid by the Department of Environment and Natural Resources to the Buncombe County Board of Education and the Asheville City Board of Education, based on the average daily membership of each school system, for the use of public schools.

. . .

16. . . . [M]oneys that clearly constitute civil penalties within the meaning of Article IX, Section 7, . . . [which] have been paid by public school systems themselves. . . . Specifically, the $11,000 paid by the Edgecombe County Board of Education to the Division of Water Quality of the Department of Environment and Natural Resources on or about 24 April 1997 for failure to comply with interim effluent limitations at the Phillips School Wastewater Treatment Facility is subject to Article IX, Section 7,

and belongs to the public schools and shall be paid by the Department of Environment and Natural Resources to the Edgecombe County Board of Education for the use of public schools in the county.

Judge Jones' order also addressed the proper disposition of monetary payments collected by state agencies and licensing boards "for the late renewal of licenses or the late payment of licensing fees" as follows:

17. . . . The court finds that the "clear proceeds" of such moneys are subject to Article IX, Section 7 . . . and belong to and shall be remitted to the public schools. The court finds that "clear proceeds" means that the moneys to be paid to the public schools may be reduced by the costs of collecting and processing the late renewal or late payment, not to include general overhead, and that those costs may be retained by the board or agency.

The order further provided that any statutes either (1) authorizing the foregoing payments, or (2) governing the disposition of these payments, violate Article IX, Section 7 "[t]o the extent that [they] . . . provide that the moneys collected are to go to agencies or for purposes other than the public schools." With respect to the constitutionality of Article 31A of Chapter 115C of our General Statutes, Judge Jones' order provided as follows:

14. Article IX, Section 7 . . . provides that the clear proceeds of all penalties and fines and forfeitures "shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools." Because this provision requires moneys to remain in the counties where the violation which gave rise to the collection occurred, Article 31A of Chapter 115C of the General Statutes, which provides for remission of the proceeds of civil penalties to the central state Civil Penalty and Forfeiture Fund, violates Article IX, Section 7 . . . and is declared unconstitutional and void.

15. By providing that the proceeds of all penalties and fines and forfeitures are to remain in the counties where collected, Article IX, Section 7 . . . vests with the local board(s) of education for each county the control of such funds and the discretion as to the best use of those moneys for public education in the county. Accordingly, to the extent that Article 31A of Chapter 115C of the General Statutes directs that the monies [sic] remitted to the

Civil Penalty and Forfeiture Fund are to be transferred to the State School Technology Fund and are to be allocated to local school units exclusively for school technology purposes, that statute violates Article IX, Section 7 . . . and is declared unconstitutional and void.

Judge Jones' order provides that it "shall be applicable to each defendant who currently has control of the moneys to be paid to the public schools, and each defendant shall be responsible for compliance with this Order. . . . [T]he burden of assuring expeditious and complete compliance with this Order shall be with the defendants generally." The order further provides that "[p]laintiffs' claims are subject to a three-year statute of limitations." Operation and enforcement of the order were stayed pending appeal.

All defendants save O'Brien and Brooks filed their notice of appeal to this Court on 11 January 2002. Defendants O'Brien and Brooks filed their notice of appeal on 14 January 2002.

This appeal presents issues of great importance to an array of State departments, agencies, and licensing boards as well as to our State's system of public education. Determination of how the substantial monetary sums at issue here—as much as $75,000,000.00 annually, according to defendants[2]—may be constitutionally collected and distributed will have a significant and lasting impact on agencies and institutions which play a vital role in the lives of all North Carolinians. With this in mind, we turn now to our analysis of the several issues presented by this appeal.

I. The Constitutionality of the Civil Penalty Fund and Technology Fund

[1] By their first assignment of error, defendants contend the trial court erred in concluding that Article 31A of Chapter 115C of our General Statutes (N.C. Gen. Stat. §§ 115C-457.1 to -457.3), which establishes the central Civil Penalty Fund and mandates that the funds accruing to it be transferred to the School Technology Fund for allocation "to local school administrative units on the basis of average daily membership" violates Article IX, Section 7 of our

---

2. In their brief, defendants state that determination of this appeal also "will control the disposition of as much as $500,000,000.00 in monetary payments collected by State agencies since 1995." At oral argument, however, counsel for plaintiffs stated that plaintiffs are not seeking redistribution of any funds collected and deposited into the Civil Penalty Fund since its inception on 1 September 1997. We therefore treat any claims plaintiffs may have to these sums as abandoned for purposes of this appeal.

Constitution. Defendants contend that the provisions of this statutory scheme are consistent with the constitutional provision's purpose and intent that the clear proceeds of civil penalties be used exclusively to fund local schools and maintain free public schools, and are therefore constitutional. We agree, and therefore reverse those portions of the trial court's order declaring this statutory scheme "unconstitutional and void."

It is well settled that, when reviewing the constitutionality of a legislative act, the North Carolina appellate courts must accord the legislative act a "presumption of constitutionality." *Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 690, 249 S.E.2d 402, 406 (1978). Our Supreme Court has articulated the appropriate standard of review as follows:

> [T]he courts have the power, and it is their duty in proper cases, to declare an act of the General Assembly unconstitutional—but it must be plainly and clearly the case. If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people.

*Glenn v. Board of Education*, 210 N.C. 525, 529-30, 187 S.E. 781, 784 (1936). "In challenging the constitutionality of a statute, the burden of proof is on the challenger, and the statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground." *Guilford County Bd. of Education v. Guilford Co. Bd. of Elections*, 110 N.C. App. 506, 511, 430 S.E.2d 681, 684 (1993). Further, "[w]here a statute is susceptible of two interpretations, one of which is constitutional and the other not, the courts will adopt the former and reject the latter." *Wayne County Citizens Assn. v. Wayne Co. Bd. of Comrs.*, 328 N.C. 24, 29, 399 S.E.2d 311, 315 (1991). We examine the constitutionality of Article 31A of Chapter 115C in light of these principles.

The Civil Penalty Fund is established by N.C. Gen. Stat. § 115C-457.1 (2001), which provides in pertinent part:

> (a) There is created the Civil Penalty and Forfeiture Fund. The Fund shall consist of the clear proceeds of all civil penalties and civil forfeitures that are collected by a State agency and are payable to the County School Fund pursuant to Article IX, Section 7 of the Constitution.

(b) . . . . The Fund and all interest accruing to the Fund shall be faithfully used exclusively for maintaining free public schools.

N.C. Gen. Stat. § 115C-457.2 (2001) further mandates that:

The clear proceeds of . . . all funds which are civil penalties or civil forfeitures within the meaning of Article IX, Section 7 . . . shall be deposited in the Civil Penalty and Forfeiture Fund. The clear proceeds of such funds include the full amount of all such penalties and forfeitures collected under authority conferred by the State, diminished only by the actual costs of collection, not to exceed ten percent (10%) of the amount collected.

The statutory scheme is completed by N.C. Gen. Stat. § 115C-457.3 (2001), which provides that:

The Office of State Budget and Management shall transfer funds accruing to the Civil Penalty and Forfeiture Fund to the State School Technology Fund. These funds shall be allocated to local school administrative units on the basis of average daily membership.

The use of funds allocated to local school administrative units from the School Technology Fund is limited to implementation of local school technology plans. N.C. Gen. Stat. § 115C-102.6D (2001).

The trial court concluded that "[b]ecause [Article IX, Section 7] requires moneys to remain in the counties where the violation which gave rise to the collection occurred," Article 31A of Chapter 115C of our General Statutes, "which provides for remission of the proceeds of civil penalties to the central state [Civil Penalty Fund], . . . is declared unconstitutional and void." The trial court further concluded that because "Article IX, Section 7 . . . vests with the local board(s) of education for each county the control of . . . and the discretion as to the best use of [the clear proceeds of civil penalties] for public education in the county," the statutory scheme at issue here is unconstitutional and void "to the extent that [it] directs that monies [sic] remitted to the [Civil Penalty Fund] are to be transferred to the [School Technology Fund] and are to be allocated to local school units exclusively for school technology purposes."

We agree with defendants' contention that this statutory scheme does not violate the plain language of Article IX, Section 7. Article IX, Section 7 provides only that the "clear proceeds of all [civil] penalties . . . collected in the several counties . . . shall belong

to and remain in the several counties, and shall be faithfully appro-
priated and used exclusively for maintaining free public schools."
N.C. Const. art. IX, § 7. The constitutional provision is silent, or at
best ambiguous, regarding several critical aspects of its operation
and enforcement, including: (1) the definition of "clear proceeds;" (2)
the establishment of a method for collecting these funds; (3) the
establishment of a method for distributing these funds among and
within the "several counties;" and (4) the specific educational
purpose(s) for which these funds may be used "for maintaining free
public schools."

Our Supreme Court has stated that where a constitutional pro-
vision's "language is free from ambiguity . . . and the purpose of the
provision would be frustrated unless it is given immediate effect, it
will be held self-executing." *Kitchin v. Wood,* 154 N.C. 446, 448, 70
S.E. 995, 996 (1911) (quoting *Tuttle v. Nat. Bank of Republic,* 161 Ill.
497, 502, 44 N.E. 984, 985 (1896)). Because Article IX, Section 7
requires generally that revenue collected from civil penalties be used
exclusively to support the State's public schools, but fails to unam-
biguously specify how this is to be accomplished, we conclude that
this constitutional provision is not self-executing and that it conse-
quently requires legislation to give it effect and a means for its
enforcement. *Id.*

It is a long-established principle that the General Assembly pos-
sesses all legislative authority not expressly or impliedly prohibited
to it by the state or federal constitutions. *Gwathmey v. State of North
Carolina,* 342 N.C. 287, 303, 464 S.E.2d 674, 683-84 (1995).
Constitutional provisions "lay down general propositions, and do not
deal in details, leaving these to be worked out by the Legislature."
*Trustees University of North Carolina v. McIver,* 72 N.C. 76, 80
(1875). Our Supreme Court has determined the "general proposition"
laid down by the funding provision of our Constitution's Education
Article, found then in Article IX, Section 5 and now in substantially
the same form in Article IX, Section 7, to be as follows:

> It is manifest that Article IX, Section 5 [now Article IX, Section 7],
> of the Constitution was designed in its entirety to secure two wise
> ends, namely: (1) To set apart the property and revenue specified
> therein for the support of the public school system; and (2) to
> prevent the diversion of public school property and revenue from
> their intended use to other purposes.

*Boney v. Kinston Graded Schools,* 229 N.C. 136, 140, 48 S.E.2d 56, 59
(1948).

We hold that the General Assembly, by enacting Article 31A of Chapter 115C, has properly legislated the details necessary to effectuate the general proposition laid down by Article IX, Section 7 that the clear proceeds of civil penalties be set aside and used exclusively for the support of our State's public schools. Article 31A of Chapter 115C provides a mechanism whereby these funds may not be appropriated by the legislature or any agency, but instead are remitted to the several counties to be used exclusively by the public schools therein. We conclude that the statutory scheme's creation of the Civil Penalty Fund, its mandate that all funds accruing thereto be transferred to the School Technology Fund for allocation to local school units based on student population, and its requirement that these funds be used to implement local school technology plans are consistent with the intent and purpose of Article IX, Section 7. We therefore reverse those portions of the trial court's order which either (1) declare Article 31A of Chapter 115C of our General Statutes to be "unconstitutional and void," or (2) direct that any payments collected by a State agency or department as an assessed "penalty" or in settlement of same be paid to a specific city and/or county school board, rather than to the Civil Penalty Fund for allocation to local school administrative units pursuant to N.C. Gen. Stat. § 115C-457.3.

## II. The Proper Disposition of Monetary Payments Provided for Under Various Statutes and Collected by Defendants: "Punitive" vs. "Remedial" Purpose

[2] By their next assignments of error, defendants contend that the trial court erred in concluding that several statutorily-authorized monetary payments collected by defendants are "penalties and forfeitures" or "fines collected . . . for . . . breach of the penal laws of the State," and thus properly within the purview of Article IX, Section 7. The payments at issue are imposed for violations of various civil or administrative statutes and rules. These payments are denominated by the statutes authorizing them as "excise taxes," tax "penalties" or "additional taxes," traffic, parking, vehicle registration, and library "fines," "late fees," "civil penalties," or simply "penalties." Defendants argue that the clear proceeds of these monetary payments are not governed by Article IX, Section 7 because, regardless of nomenclature, they are actually *remedial* rather than punitive in nature, and that defendants should therefore be allowed to retain and use these payments for purposes other than maintaining free public schools. Consequently, defendants except to the trial court's conclusion that the several statutes authorizing these monetary payments

violate Article IX, Section 7 to the extent they "provide that the moneys collected are to go to agencies or for purposes other than the public schools."

In considering defendants' contentions, we are guided by several principles articulated by our Supreme Court in previous decisions considering the applicability of Article IX, Section 7 to various statutorily-authorized monetary payments. First, our Supreme Court "[has] interpret[ed] the provisions of [Article IX, Section 7] . . . as identifying two distinct funds for the public schools. These are (1) the clear proceeds of all penalties and forfeitures in *all cases, regardless of their nature, so long as they accrue to the state*; and (2) the clear proceeds of all fines collected for any breach of the criminal laws." *Mussallam v. Mussallam*, 321 N.C. 504, 508-09, 364 S.E.2d 364, 366, *reh'g denied*, 322 N.C. 116, 367 S.E.2d 915 (1988) (emphasis added). Since none of the payments at issue in the present case are criminal fines, we are dealing here exclusively with the first *Mussallam* category of "funds for the public schools."

Second, in defining the types of payments encompassed by this first category of funds, the Court in *Mussallam* stated that because "[t]he term 'penal laws,' as used in the context of article IX, section 7, means laws that impose a monetary payment for their violation," only payments which are *"punitive* rather than remedial in nature and [are] intended to *penalize the wrongdoer* rather than compensate a particular party" are subject to Article IX, Section 7. *Id.* at 509, 364 S.E.2d at 367 (emphasis added); *see also* D. Lawrence, *Fines, Penalties, and Forfeitures: An Historical and Comparative Analysis*, 65 N.C.L. Rev. 49, 65 (1986) (". . . fines, penalties, and forfeitures as a group are distinguished as payments imposed as *punishment*. If a payment, however labelled, is imposed for some other purpose—usually as compensation to a person or entity who has been harmed because of the violation—then [Article IX, Section 7] does not apply").

Third, the clear proceeds of all penalties and forfeitures which are punitive in nature *and which are required to be paid to the State or to a department of the State* are subject to Article IX, Section 7. *Craven County Bd. of Education v. Boyles*, 343 N.C. 87, 91, 468 S.E.2d 50, 52 (1996); *see also State ex rel. Thornburg v. House and Lot*, 334 N.C. 290, 295, 432 S.E.2d 684, 687 (1993). Finally, our Supreme Court has stated that the *label* attached to the monetary payment does not control the determination of whether such a payment constitutes a penalty, forfeiture, or fine within the meaning of Article

IX, Section 7. *Craven County*, 343 N.C. at 92, 468 S.E.2d at 53; *see also Cauble v. City of Asheville*, 301 N.C. 340, 344, 271 S.E.2d 258, 260 (1980), *aff'd*, 314 N.C. 598, 336 S.E.2d 59 (1985). Indeed, "it is neither 'the label attached to the money' nor 'the [collection] method employed,' but 'the *nature of the offense committed*' that determines whether the payment constitutes a penalty" and is thus subject to Article IX, Section 7, or remedial and outside the constitutional provision's purview. *Craven County*, 343 N.C. at 92, 468 S.E.2d at 53 (quoting *Cauble*, 301 N.C. at 344, 271 S.E.2d at 260) (emphasis added); *see also Donoho v. City of Asheville*, 153 N.C. App. 110, 116, 569 S.E.2d 19, 22 (2002), *disc. review denied*, 356 N.C. 669, 576 S.E.2d 110-11 (2003). With these principles in mind, we examine each of the challenged monetary payments in the sequence in which they are addressed by the trial court's order.

### A. Payments Collected by the Department of Transportation from Owners of Vehicles Which Exceed Axle-Weight Limits

[3] Our Legislature has placed certain restrictions on the weight at which different types of vehicles may be lawfully operated on the State's highways. N.C. Gen. Stat. § 20-118 (2001). Subsection (e) of N.C. Gen. Stat. § 20-118, which is entitled "Penalties," provides that "the Department of Transportation shall assess a civil penalty against the owner or registrant" of a vehicle "for each violation of the . . . weight limits" set forth therein. Defendants except to the trial court's ruling that payments collected by the Department of Transportation (DOT) pursuant to N.C. Gen. Stat. § 20-118(e) are subject to Article IX, Section 7 and belong to the public schools. This assignment of error is without merit.

While the statute clearly and repeatedly characterizes the monetary payment authorized thereunder as a "civil penalty" or "penalty," under *Craven County* and *Cauble*, "the label attached to the money does not control[]" the determination of whether it is a penalty or breach of the State's penal laws within the meaning of Article IX, Section 7. *Craven County*, 343 N.C. at 92, 468 S.E.2d at 53 (quoting *Cauble*, 301 N.C. at 344, 271 S.E.2d at 260). Since assessments for violation of the weight limits are to be paid to the DOT, a State agency, the payments provided for in N.C. Gen. Stat. § 20-118(e) clearly "accrue to the state" within the meaning of *Craven County* and *House and Lot*. Our analysis of whether these payments are subject to Article IX, Section 7 therefore comes down to a determination of whether the payments are punitive or remedial in nature. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367.

We hold that the payments authorized by N.C. Gen. Stat. § 20-118(e) are punitive in nature and are therefore subject to Article IX, Section 7. The statute authorizes assessment of a "civil penalty" by the DOT against any person who engages in a proscribed course of conduct, i.e., "unlawful[ly]" owning or operating a vehicle above certain weight limits on the State's highways. N.C. Gen. Stat. § 20-118; *see also* N.C. Gen. Stat. § 20-115 (2001) ("It shall be unlawful for any person to drive . . . on any highway any vehicle or vehicles of a size or weight exceeding the limitations stated in this title . . . ."). We conclude that N.C. Gen. Stat. § 20-118(e) is a "penal law" because it "impose[s] a monetary payment for [its] violation" and "is intended to penalize the wrongdoer rather than compensate a particular party" for violation of a proscribed course of conduct. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367; *see also Craven County*, 343 N.C. 87, 468 S.E.2d 50 (moneys paid to the Department of Environment, Health and Natural Resources pursuant to a settlement agreement for violations of environmental laws held to constitute a penalty, fine, or forfeiture under Article IX, Section 7); *House and Lot*, 334 N.C. 290, 432 S.E.2d 684 (disposition of proceeds from sale of property forfeited by owner for conduct in violation of RICO Act held governed by Article IX, Section 7). As such, we hold that the clear proceeds of payments collected by the DOT under N.C. Gen. Stat. § 20-118(e) belong to the public schools pursuant to the statutory scheme set forth in Article 31A of Chapter 115C of our General Statutes.

We are unpersuaded by defendants' assertion that the weight penalties are remedial, rather than punitive, in nature because they are intended to compensate the State for deterioration of its highways due to operation of overweight vehicles thereon. In *Craven County* and *House and Lot*, our Supreme Court declined to characterize payments made for violations of both the State's environmental laws and its RICO Act as compensation for costs incurred by the State due to its citizens' illegal conduct, and we likewise decline to so characterize the payments at issue in the present case.

B. Payments Collected by the Department of Transportation for Lapses in Insurance Coverage

[4] Under N.C. Gen. Stat. § 20-309(e) (2001), the DOT may collect a "civil penalty" of $50.00 from vehicle owners who allow their motor vehicle insurance to lapse, as well as a "civil penalty" of $200.00 from insurers who fail to give notice of insurance termination to the DOT. Defendants except to the trial court's ruling that these payments

belong to the public schools, contending instead that N.C. Gen. Stat. § 20-309 is remedial in nature and that the payments authorized thereunder are thus not subject to Article IX, Section 7. We disagree with defendants' contention and affirm this portion of the trial court's order.

As with the vehicle weight-limit statute discussed above, N.C. Gen. Stat. § 20-309(e) authorizes the DOT to collect a monetary payment from individuals and entities which engage in certain proscribed conduct, which in this case consists of (1) a car owner allowing his motor vehicle insurance to lapse, or (2) an insurer failing to notify the DOT of termination of a motor vehicle insurance policy. Our Supreme Court has characterized the "civil penalty" authorized under N.C. Gen. Stat. § 20-309(e) as "the exclusive *sanction* for failure to give [the Department of Motor Vehicles] the required notice of termination." *Allstate Ins. Co. v. McCrae*, 325 N.C. 411, 417, 384 S.E.2d 1, 4 (1989) (emphasis added). *Black's Law Dictionary* defines a "sanction" as "[t]hat part of a law which is designed to secure enforcement by imposing a penalty for its violation or offering a reward for its observance." *Black's Law Dictionary* 1341 (6th ed. 1990). Because we are bound by our Supreme Court's conclusion in *McCrae* that these payments are in the nature of sanctions, we conclude that they are "intended to penalize the wrongdoer rather than compensate a particular party" and are thus punitive. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367. Accordingly, we hold that the payments authorized by N.C. Gen. Stat. § 20-309(e) are subject to Article IX, Section 7 and belong to the public schools, pursuant to the statutory scheme set forth in Article 31A of Chapter 115C of our General Statutes.

## C. Payments Collected by the Department of Revenue For Failure to Comply with Regulatory or Statutory Tax Provisions

[5] Defendants assert the trial court erred in concluding that payments collected by the Department of Revenue (DOR) under N.C. Gen. Stat. §§ 105-113.89, -163.15, -163.41, -164.14, -231 and -236 (2001) for late filings, underpayments, and failure to comply with various provisions of the North Carolina tax code are subject to Article IX, Section 7. We agree, and therefore reverse this portion of the trial court's order.

At the outset we find to be without merit defendants' contention that plaintiffs' claims involving these payments should be dismissed on the grounds that the Secretary of Revenue cannot be sued for

declaratory relief pursuant to N.C. Gen. Stat. § 105-267. N.C. Gen. Stat. § 105-267 (2001) provides in pertinent part that "[n]o court of this State shall entertain a suit of any kind brought for the purpose of preventing the collection of any tax . . . ." This provision does not apply to the instant case, however, because plaintiffs neither owe any tax liability to the DOR, nor are they attempting to prevent the collection of a tax. Plaintiffs' claims against the Secretary of Revenue were not "brought for the purpose of preventing the collection of any tax" from plaintiffs; they were instead brought seeking a determination as to the proper disposition of amounts collected by the DOR as statutorily-denominated "penalties" or "additional taxes." We conclude that plaintiffs' declaratory judgment action with respect to the Secretary of Revenue is therefore not precluded by N.C. Gen. Stat. § 105-267.

[6] However, we agree with defendants' assertion that the various payments denominated as "penalties" or "additional taxes" under the challenged portions of Chapter 105 of our General Statutes (the North Carolina Revenue Act) are remedial, rather than punitive, in nature, and we therefore hold the trial court's conclusion that these payments belong to the public schools under Article IX, Section 7 was erroneous. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367.

Civil tax penalties and additions to tax for fraud, negligence, and substantial understatement of tax liability under the federal Revenue Act have consistently been determined to be remedial, rather than punitive, in nature. *See Helvering v. Mountain Producers Corp.*, 303 U.S. 391, 401, 82 L. Ed. 917, 923 (1938); *Thomas v. C.I.R.*, 62 F.3d 97, 100 (4th Cir. 1995); *Little v. C.I.R.*, 106 F.3d 1445, 1454 (9th Cir. 1997); *U.S. v. Alt*, 83 F.3d 779, 781 (6th Cir. 1996), *cert. denied*, 519 U.S. 872 (1996); *Ames v. Commissioner*, 112 T.C. 304 (1999). In holding that the civil fraud penalty contained within the federal Revenue Act was remedial rather than punitive in nature, the United States Supreme Court stated as follows:

> The remedial character of sanctions imposing *additions to a tax* has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud.

*Helvering*, 303 U.S. at 401, 82 L. Ed. at 923 (emphasis added). In so holding, the Court, noting that the civil fraud penalty was introduced

into the federal Revenue Act under the heading "Interest and Additions to the Tax," stated that "[o]bviously all of these 'Additions to the Tax' were *intended by Congress as civil incidents of the assessment and collection of the income tax." Id.* at 405, 82 L. Ed. at 925.

Significantly, the penalties provision of the North Carolina Revenue Act, which is similar to the penalties provision of the federal Act, provides that "[p]enalties assessed by the Secretary under this Subchapter are assessed as an *additional tax.*" N.C. Gen. Stat. § 105-236 (2001) (emphasis added). Moreover, our Legislature has provided that "[u]nless the context clearly requires otherwise, the terms 'tax' and 'additional tax' include *penalties* and interest as well as the principal amount." N.C. Gen. Stat. § 105-228.90(b)(7) (2001) (emphasis added). We conclude that the "[p]enalties assessed . . . as an additional tax" under N.C. Gen. Stat. § 105-236 and other provisions of the North Carolina Revenue Act for failure to comply with the tax code are remedial, not punitive, in nature, and we hold that they are not subject to Article IX, Section 7 and thus do not belong to the public schools. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367.

D. Payments Collected by the Employment Security Commission from Employers for Overdue Contributions to the Unemployment Insurance Fund, Late Filing of Wage Reports, and Tendering a Worthless Check

**[7]** Defendants contend the trial court erred in concluding that payments the Employment Security Commission (ESC) is entitled to collect under Chapter 96 of our General Statutes (the Employment Security Act) from employers for late contributions to the Unemployment Insurance Fund are subject to Article IX, Section 7. These payments are statutorily characterized as "[a]n *additional penalty* in the amount of ten percent (10%) of the *taxes* due" from the employer as its contribution to the Fund. N.C. Gen. Stat. § 96-10(a) (2001) (emphasis added). Defendants also except to the trial court's ruling that amounts the ESC is authorized to collect from employers as (1) a "late filing penalty" for failure to timely file certain reports, and (2) a "penalty" for tendering a worthless check in payment of its contributions, belong to the public schools as well. N.C. Gen. Stat. § 96-10(g), -(h) (2001).

We agree with defendants' assertion that N.C. Gen. Stat. § 96-10 both (1) defines employers' contribution to the Unemployment Insurance Fund as a "tax," and (2) provides that the penalties the statute establishes for various transgressions by employers relating

to payment of these contributions are part of these "taxes." In determining whether these penalties are punitive or remedial in nature, each party applies the same analysis it applied in analyzing the penalties collected by the Department of Revenue under the Revenue Act for failure to comply with various provisions of the North Carolina tax code. As with the payments collected as penalties under the Revenue Act, we agree with defendants' contention that the payments collected as penalties under the Employment Security Act are in the nature of "additional taxes" or "tax penalties." As such, we conclude (1) these payments collected as penalties are part of employers' contributions to the Unemployment Insurance Fund; (2) employers' contributions to the Unemployment Insurance Fund are "taxes;" and (3) these payments collected as penalties under the Employment Security Act are "additional taxes" and thus remedial, rather than punitive, in nature. *Helvering*, 303 U.S. at 401, 82 L. Ed. at 923. We therefore hold that the payments collected by the ESC pursuant to N.C. Gen. Stat. § 96-10 are not subject to Article IX, Section 7 and do not belong to the public schools, and we reverse this portion of the trial court's order. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367.

E. Payments Collected by the Boards of Trustees of the Consolidated University of North Carolina Campuses for Violation of Ordinances Regulating Traffic, Parking, and Vehicle Registration

[8] Defendants contend the trial court erred in concluding that payments collected under N.C. Gen. Stat. § 116-44.4(h) by the boards of trustees of the several University of North Carolina (UNC) campuses as "penalties" for the violation of campus traffic and parking ordinances are subject to Article IX, Section 7. We agree and hold that these payments do not belong to the public schools.

Article IX, Section 8 of the North Carolina Constitution provides in pertinent part that "[t]he General Assembly may enact laws necessary and expedient for the maintenance and management of The University of North Carolina and the other public institutions of higher education." N.C. Const. art. IX, § 8. Defendants argue, and we agree, that our Legislature acted within this constitutional grant of power by enacting N.C. Gen. Stat. § 116-44.4 (2001), which gives the trustees of each UNC campus the authority to adopt ordinances regulating traffic and parking on their respective campuses. The trustees may choose to treat violations of these ordinances as either (1) "infraction[s] as defined in G.S. 14-3.1" punishable by a "penalty" of up to $50.00, or (2) "civil penalties" assessed in amounts "graduated

according to the seriousness of the offense or the number of prior offenses by the person charged." N.C. Gen. Stat. § 116-44.4(g), -(h) (2001). Violations characterized by the trustees under N.C. Gen. Stat. § 116-44.4(g) as "infractions" are prosecuted by the local district attorney, and any resulting penalties are imposed and collected by the district court. N.C. Gen. Stat. §§ 15A-1114; 15A-1116 (2001). "The proceeds of penalties for infractions are payable to the county in which the infraction occurred for the use of the public schools." N.C. Gen. Stat. § 14-3.1(a) (2001). There is therefore no doubt that the proceeds of penalties collected for violation of campus traffic and parking ordinances as "infractions" under N.C. Gen. Stat. 116-44.4(g) belong to the public schools.

The payments in dispute here, then, are only those resulting from violations of campus traffic and parking regulations which the trustees have denominated as "civil penalties," rather than "infractions," under N.C. Gen. Stat. § 116-44.4(h). These penalties are collected according to procedures established by the trustees, which "may be enforced by civil action in the nature of debt." N.C. Gen. Stat. § 116-44.4(h). Our Legislature has directed that the penalties collected under this statute must be placed in a trust account on each campus and used only for the following purposes:

(1) To defray the cost of administering and enforcing [campus parking and traffic] ordinances . . .;

(2) To develop, maintain, and supervise parking areas and facilities;

(3) To provide bus service or other transportation systems or facilities, including payments to any public or private transportation system serving University students, faculty, or employees;

(4) As a pledge to secure revenue bonds for parking facilities issued under Article 21 of this Chapter;

(5) Other purposes related to parking, traffic, and transportation on the campus.

N.C. Gen. Stat. § 116-44.4(m) (2001). Defendants argue, and we agree, that the "civil penalties" imposed by N.C. Gen. Stat. § 116-44.4(h) are intended to compensate each campus for the expense of establishing and maintaining parking- and transportation-related services, rather than to penalize individuals who violate campus parking and traffic ordinances. *Craven County*, 343 N.C. at 92, 468 S.E.2d at

53 (the "*nature* of the *offense* committed" determines whether a payment constitutes a penalty). We therefore hold that N.C. Gen. Stat. § 116-44.4(h) is remedial in nature, and that the payments collected pursuant to the statute are not subject to Article IX, Section 7. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367.

Moreover, we note that our Legislature acted pursuant to a constitutional provision separate and apart from Article IX, Section 7 in enacting N.C. Gen. Stat. § 116-44.4. We conclude that because our Legislature enacted N.C. Gen. Stat. § 116-44.4 pursuant to a clear grant of constitutional authority to establish a mechanism for administering the "maintenance and management" of traffic and parking on each UNC campus, this statute is constitutional under Article IX, Section 8 of our Constitution, which is a co-equal provision with Article IX, Section 7. N.C. Const. art. IX, § 8; *see also Stephenson v. Bartlett*, 355 N.C. 354, 409, 562 S.E.2d 377, 413 (2002) (Parker, J., dissenting) (it is a "fundamental principle" that one section of the North Carolina constitution cannot violate another).

We hold that the clear proceeds of payments collected pursuant to N.C. Gen. Stat. § 116-44.4(h) are not subject to Article IX, Section 7, and we reverse this portion of the trial court's order.

F. Payments Collected by the Boards of Trustees of the Consolidated University of North Carolina Campuses for Loss, Damage, or Late Return of Materials Borrowed from University Libraries

[9] Defendants also assert the trial court erred in concluding that payments collected from individuals by the trustees of each UNC campus for loss, damage, or late return of materials borrowed from campus libraries are subject to Article IX, Section 7. The constituent UNC institutions assess and collect these payments pursuant to authority granted to their trustees by N.C. Gen. Stat. § 116-33, which provides in pertinent part as follows:

> Each board of trustees shall promote the sound development of the institution within the functions prescribed for it. . . . Each board shall serve as advisor to the Board of Governors on matters pertaining to the institution and shall also serve as advisor to the chancellor concerning the management and development of the institution. The powers and duties of each board of trustees, not inconsistent with other provisions of this Article, shall be defined and delegated by the Board of Governors.

N.C. Gen. Stat. § 116-33 (2001). Applying similar reasoning as in our holding above that campus parking and traffic penalties do not belong to the public schools, we hold that UNC campus library fines imposed under this statute are not subject to Article IX, Section 7. We agree with defendants' argument that because these fines are intended to (1) ensure the availability of library materials and (2) compensate each UNC campus for costs incurred in replacing lost or damaged materials, they are remedial rather than punitive in nature, and therefore are not subject to Article IX, Section 7. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367; *see also Craven County*, 343 N.C. at 92, 468 S.E.2d at 53.

Moreover, as with the statute authorizing collection of penalties for violation of campus parking and traffic ordinances, we note that our Legislature acted pursuant to a constitutional provision separate and apart from Article IX, Section 7 in enacting N.C. Gen. Stat. § 116-33. Article IX, Section 9 of the North Carolina Constitution provides that "[t]he General Assembly shall provide that the benefits of The University of North Carolina and other public institutions of higher education, as far as practicable, be extended to the people of the State free of expense." N.C. Const. art. IX, § 9. We conclude (1) that the broad authority granted to UNC campus trustees under N.C. Gen. Stat. § 116-33, including the authority to assess fines for the loss, damage, or late return of campus library materials, is intended to promote the remedial purpose of keeping the cost of an education at the several UNC campuses as low as possible; and (2) that because N.C. Gen. Stat. § 116-33 advances this remedial purpose, the statute is constitutional under Article IX, Section 9 of our Constitution, which is a co-equal provision with Article IX, Section 7. *Stephenson*, 355 N.C. at 409, 562 S.E.2d at 413.

We hold that the clear proceeds of payments collected pursuant to N.C. Gen. Stat. § 116-33 are not subject to Article IX, Section 7, and we therefore reverse this portion of the trial court's order.

### G. Payments Collected by the Department of Revenue From Persons Dealing in Unauthorized Substances

[10] Defendants except to the trial court's ruling that payments collected pursuant to Article 2D of Chapter 105 of our General Statutes belong to the public schools under Article IX, Section 7. These payments, denominated as "unauthorized substance taxes," are assessed against "dealers" who possess "controlled substances" or "illicit spiritous liquor." N.C. Gen. Stat. §§ 105-113.105 through 105-113.113

**N.C. SCHOOL BDS. ASS'N v. MOORE**

[160 N.C. App. 253 (2003)]

(2001). The statutory scheme requires dealers to report their possession of these unauthorized substances to the Secretary of Revenue, and to pay a substantial "excise tax" based on the amount of the substance in their possession. N.C. Gen. Stat. §§ 105-113.107, -113.109. In return, dealers receive "revenue stamps" which they must affix to the unauthorized substance before selling it. N.C. Gen. Stat. § 105-113.108(a). "Penalties" and interest are assessed against any "dealer who possesses an unauthorized substance to which a stamp has not been affixed. . . ." N.C. Gen. Stat. § 105-113.111 (2001).

In enacting this statutory scheme, our Legislature provided that "[t]he purpose of [Article 2D of Chapter 105] is to levy an excise tax to generate revenue for State and local law enforcement agencies and for the General Fund." N.C. Gen. Stat. § 105-113.105 (2001). The Department of Revenue must remit seventy-five percent of each unauthorized substance tax collected "to the State or local law enforcement agency that conducted the investigation of a dealer that led to the assessment," and the remainder goes to the General Fund. N.C. Gen. Stat. § 105-113.113(b) (2001). Defendants contend the trial court erred in striking down this portion of the statutory scheme and ruling that the clear proceeds of unauthorized substance taxes instead belong to the public schools under Article IX, Section 7. We agree and reverse the trial court's ruling.

In *State v. Ballenger*, 123 N.C. App. 179, 472 S.E.2d 572 (1996), *aff'd per curiam*, 345 N.C. 626, 481 S.E.2d 84, *cert. denied*, 522 U.S. 817, 139 L. Ed. 2d 29 (1997), a panel of this Court considered the constitutionality, for double jeopardy purposes, of the unauthorized substances tax as imposed under a previous statutory scheme and held that the tax "does not have such fundamentally *punitive* characteristics as to render it violative of the prohibition against multiple punishments for the same offense contained in the Double Jeopardy Clause." *Ballenger*, 123 N.C. App. at 184, 472 S.E.2d at 575 (emphasis added). In so holding, we stated that the statutory scheme "is a legitimate and *remedial* effort to recover revenue from those persons who would otherwise escape taxation when engaging in the highly profitable, but illicit and sometimes deadly activity of possessing, delivering, selling or manufacturing large quantities of controlled drugs." *Id.* (emphasis added); *see also State v. Woods*, 136 N.C. App. 386, 389-90, 524 S.E.2d 363, 365, *disc. review denied*, 351 N.C. 370, 543 S.E.2d 147 (2000); *State v. Adams*, 132 N.C. App. 819, 820, 513 S.E.2d 588, 589, *disc. review denied*, 350 N.C. 836, 538 S.E.2d 570, *cert. denied*, 528 U.S. 1022, 145 L. Ed. 2d 414 (1999).

Plaintiffs cite *Lynn v. West*, 134 F.3d 582 (4th Cir. 1998), *cert. denied*, 525 U.S. 813, 142 L. Ed. 2d 36 (1998) in support of their contention that the unauthorized substances tax is subject to Article IX, Section 7 under *Mussallam* because the tax is actually *punitive*, rather than remedial, in nature. In *Lynn*, the Fourth Circuit Court of Appeals concluded that a previous version of North Carolina's unauthorized substances tax "has enough punitive features that its nature is that of a criminal penalty, not a civil tax." *Lynn*, 134 F.3d at 589. However, it is well-settled that with the exception of decisions of the United States Supreme Court, federal appellate decisions are binding upon neither the appellate nor trial courts of this State. *State v. Wambach*, 136 N.C. App. 842, 843-44, 526 S.E.2d 212, 213 (2000). Moreover, absent modification by our Supreme Court, a panel of this Court is bound by the prior decision of another Court of Appeals panel addressing the same issue. *State v. Harris*, 157 N.C. App. 647, 656, 580 S.E.2d 63, 69 (2003). Because our Supreme Court has declined to conclude that the unauthorized substances tax is punitive in nature, we are bound by the conclusions of prior panels of this Court that this tax is intended for a remedial purpose. *Harris*, 157 N.C. App. at 656, 580 S.E.2d at 69; *Woods*, 136 N.C. App. at 389-90, 524 S.E.2d at 365; *Adams*, 132 N.C. App. at 820, 513 S.E.2d at 589. We therefore hold that payments collected under Article 2D of Chapter 105 of our General Statutes are not subject to Article IX, Section 7 and do not belong to the public schools. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367.

### H.  Money Paid by an Environmental Violator to Perform or Fund a  Third  Party's  Performance  of  a  "Supplemental  Environmental Project" in lieu of Paying a Civil Penalty

[11] Our Legislature has authorized the Department of Environment and Natural Resources (DENR) to assess civil penalties against individuals and entities who violate certain statutory and regulatory requirements designed to protect the environment. N.C. Gen. Stat. § 143-215.6A (2001) (assessing civil penalties for violation of water quality laws); N.C. Gen. Stat. § 143-215.114A (2001) (assessing civil penalties for violation of air quality laws). When a civil penalty is assessed, DENR may also collect from an environmental violator "the reasonable costs of any investigation, inspection, or monitoring survey which revealed the violation . . . ." N.C. Gen. Stat. § 143-215.3(a)(9) (2001). The statutes authorizing these civil penalties expressly provide that "[t]he clear proceeds of civil penalties assessed . . . shall be remitted to the Civil Penalty and Forfeiture

Fund," from which, pursuant to our holding in Part I of this opinion, they are to be transferred to the School Technology Fund for use by the state's public schools. N.C. Gen. Stat. § 143-215.6A(h1); *see also* N.C. Gen. Stat. § 143-215.114A(h).

Since at least 1998, however, DENR's Division of Water Quality has implemented a policy whereby environmental violators are allowed to voluntarily undertake a "supplemental environmental project" (SEP) in lieu of paying some portion of an assessed civil penalty. According to a 1998 DENR memorandum, a SEP is defined as a project that is "beneficial to the environment and/or to public health that a[n environmental violator] agrees to perform as part of a settlement to an enforcement action." According to the same memorandum, DENR's purpose in allowing a SEP is to "provide opportunities for environmental benefit as a result of negotiated settlements where some portion of the settlement agreement may be in the form of a [SEP]."

Defendants contend the trial court erred in ruling that "[m]onies paid to support a [SEP], in settlement of an assessed civil penalty pursuant to a settlement agreement with [DENR], are subject to Article IX, Section 7 . . . and belong to and shall be remitted to the public schools." Defendants also specifically challenge the trial court's conclusion that "the $50,125 paid by the City of Kinston to Lenoir Community College on or about 31 March 1998 as a SEP pursuant to a Consent Agreement and Settlement . . . is subject to Article IX, Section 7 . . . and belongs to and shall be paid by [DENR] to the Lenoir County Board of Education . . . ." We do not agree with defendants' contentions and affirm this portion of the trial court's order, to the extent that it provides that monies paid in support of a SEP are subject to Article IX, Section 7. Pursuant to our holding in Part I of this opinion, however, we reverse that portion of the trial court's order directing DENR to pay to the Lenoir County Board of Education the $50,125.00 DENR received from the City of Kinston on 31 March 1998 in support of a SEP, and hold that DENR must instead remit these moneys to the Civil Penalty Fund.

The DENR memorandum announcing implementation of the SEP option for environmental violators defines a SEP as "part of a *settlement* to an enforcement action" and states that DENR is implementing the policy "to provide opportunities for environmental benefit as a result of negotiated *settlements*." In *Craven County*, our Supreme Court held that payments made by an environmental violator to DENR pursuant to a settlement agreement following assessment of a

civil penalty were subject to Article IX, Section 7, stating that "[t]he fact that the monies were paid pursuant to a settlement agreement does not change the nature of these payments. The monies were still paid because of a civil penalty assessed against [the environmental violator]." *Craven County*, 343 N.C. at 91, 468 S.E.2d at 52. In the present case, we conclude that payments by an environmental violator, including the City of Kinston, to support a SEP as part of a settlement agreement are "still paid because of a civil penalty assessed against the [environmental violator]" and as such are punitive in nature and therefore subject to Article IX, Section 7. *Id.*

With respect to the payment made by the City of Kinston, we are unpersuaded by defendant's argument that because the payment was made to Lenoir Community College in support of a SEP, it did not "accrue to the state" and thus was not subject to Article IX, Section 7. The only reason the City of Kinston paid the $50,125.00 to Lenoir Community College rather than DENR is because DENR, acting without any statutory or regulatory authority to do so, unilaterally implemented its policy of allowing SEPs as an alternative to enforcing the State's environmental laws through the imposition of civil penalties. As our Supreme Court stated in *Boney v. Kinston Graded Schools*, one of the "wise ends" for which Article IX, Section 7 was designed was "to prevent the diversion of public school property and revenue from their intended use to other purposes." *Boney*, 229 N.C. at 140, 48 S.E.2d at 59; *see also Shore v. Edmisten, Atty. General*, 290 N.C. 628, 633, 227 S.E.2d 553, 558 (1976) (holding that statutes and judgments purporting to direct payment of a fine anywhere other than for the use of the public schools violate Article IX, Section 7).

We hold that any monies paid in support of a SEP, including the $50,125.00 paid by the City of Kinston to Lenoir Community College on or about 31 March 1998, are subject to Article IX, Section 7 and must be remitted by DENR to the Civil Penalty Fund for allocation to local school administrative units pursuant to N.C. Gen. Stat. 115C-457.3.

We note that by their brief's twelfth assignment of error, defendants contend "[t]he trial court erred when it concluded 'investigative costs' collected by [DENR, pursuant to N.C. Gen. Stat. § 143-215.3(a)(9)] as part of an enforcement action against a[n environmental] violator belong to the county school funds." However, because defendants concede in their brief that "the trial court did *not specifically find* that 'investigative costs' assessed and collected by [DENR] are civil penalties under [Article IX, Section 7]," asserting

instead that "the general conclusion of law challenged by this assignment of error *could be read* as supporting that position," we decline to address this assignment of error as it is not properly before this Court. *See* N.C.R. App. P. 10(b).

I. Civil Penalties Paid by Local Public School Systems to State Agencies

[12] Defendants except to the trial court's ruling that payments "which clearly constitute civil penalties" made by local public school systems themselves "remain subject to Article IX, Section 7 . . . and belong to the public schools and shall be remitted by the collecting state agencies to the public schools." Defendants also specifically challenge the trial court's ruling that "the $11,000 paid by the Edgecombe County Board of Education to [DENR's Division of Water Quality] on or about 24 April 1997 for failure to comply with interim effluent limitations at the Phillips School Wastewater Treatment Facility is subject to Article IX, Section 7 . . . and shall be paid by [DENR] to the Edgecombe County Board of Education for the use of the public schools in that county." We agree with defendants and reverse this portion of the trial court's order.

While the trial court concluded that payments made by local public schools to various State agencies "clearly constitute civil penalties within the meaning of Article IX, Section 7," we note that in light of our holdings in the several foregoing sections of this opinion, these payments may or may not be subject to Article IX, Section 7. The determinative factor is whether the authority under which each payment is collected is "punitive" or "remedial" in nature. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367; *see also Craven County*, 343 N.C. at 92, 468 S.E.2d at 53. However, a case-by-case analysis of the different payments made by local public schools to various state agencies is unnecessary, because we hold that any money collected by a State agency from a public school or local school administrative unit should not be remitted to the Civil Penalty Fund for ultimate distribution among the State's public schools.

Our Supreme Court has stated that "[p]ublic policy in this jurisdiction, buttressed by the uniform decisions of this Court, will not permit a wrongdoer to enrich himself as a result of his own misconduct." *Davenport v. Patrick*, 227 N.C. 686, 689, 44 S.E.2d 203, 205 (1947). If payments collected as civil penalties from public schools remain subject to Article IX, Section 7 and are utilized by the public schools under the statutory scheme set forth in Article 31A of

Chapter 115C of our General Statutes, the offending unit will receive back from the School Technology Fund a portion of the fine or penalty assessed against the unit. *See* N.C. Gen. Stat. § 115C-457.3. The offending unit will thus be unjustly enriched by its own wrongdoing, in the sense that it will retain the use of money which would otherwise have been paid in its entirety to a State agency as a consequence of the offending units's wrongdoing.

We hold that payments collected by State agencies as fines or civil penalties assessed against a public school or local school administrative unit, including the $11,000.00 paid to DENR by the Edgecombe County Board of Education on or about 24 April 1997, need not be remitted to the Civil Penalty Fund, but may instead remain with the collecting State agency, where they may be used for purposes other than maintaining public schools.

### J. Payments Collected by State Agencies and Licensing Boards for Licensees' Failure to Timely Comply with Licensing Requirements

[13] Defendants assert the trial court erred in ruling that payments collected from individuals by "numerous state agencies and licensing boards . . . for the late renewal of licenses or the late payment of license fees" are subject to Article IX, Section 7. Noting that our Legislature has granted various occupational licensing boards the authority to assess and collect "late fees" or "penalties" from their licensees for failure to timely renew their licenses, defendants argue that these payments are remedial, rather than punitive, in nature, and therefore outside the scope of Article IX, Section 7. We agree, and we reverse this portion of the trial court's order.

Under N.C. Gen. Stat. § 87-22 (1997), the version of the statute in effect at this litigation's commencement, the North Carolina Board of Examiners of Plumbing, Heating, and Fire Sprinkler Contractors (Plumbing and Heating Board) is authorized to assess a "penalty for nonpayment" in the amount of 10% of the annual licensing fee for each month a licensee delays renewal, with the condition that the "penalty for nonpayment shall not exceed the. amount of the annual fee." Similarly, pursuant to the version of N.C. Gen. Stat. § 87-44 in effect at this litigation's commencement, the North Carolina Board of Examiners of Electrical Contractors (Electrical Board) may collect $25.00 from each licensee who renews late. Likewise, the North Carolina Board of Cosmetic Art Examiners (Cosmetic Board), pursuant to N.C. Gen. Stat. §§ 88B-6, -21 (2001), collects payments ranging from between $10.00 to $25.00 from license holders for late

renewal of licenses. Finally, the North Carolina State Bar (State Bar) collects a "late fee" of $30.00 for members' late payment of annual dues under N.C. Gen. Stat. § 84-34 (2001).

Only payments which are *"punitive* rather than remedial in nature and [are] intended to *penalize the wrongdoer* rather than compensate a particular party" are subject to Article IX, Section 7. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367 (emphasis added). The *label* attached to the monetary payment does not control the determination of whether such a payment constitutes a penalty, forfeiture, or fine within the meaning of Article IX, Section 7. *Craven County*, 343 N.C. at 92, 468 S.E.2d at 53; *see also Cauble*, 301 N.C. at 344, 271 S.E.2d at 260.

Based on the record before us, we conclude that the payments collected by the Plumbing and Heating Board, the Electrical Board, the Cosmetic Board, and the State Bar are intended not as a means to punish delinquent license holders, but rather to compensate the collecting agency for additional operating expenses incurred in collecting money due or compelling performance of a licensing requirement. Each entity's director maintains that these assessments are used to fund its operations and/or to administer its regulatory program. The assessments themselves are for such small dollar amounts that we discern no punitive intent in the statutes authorizing them. We hold that the payments collected by the Plumbing and Heating Board, the Electrical Board, the Cosmetic Board, and the State Bar for late renewal of occupational licenses or late payment of license fees are remedial in nature and therefore not subject to Article IX, Section 7. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 367.

III.  Statute of Limitations

[14] By their final assignment of error, defendants except to the trial court's conclusion that plaintiffs' claims are subject to the three-year statute of limitations found in N.C. Gen. Stat. § 1-52. Defendants contend that N.C. Gen. Stat. § 1-54(2) should apply instead, limiting plaintiff's claims to payments collected within one year preceding the filing of the complaint. We disagree.

N.C. Gen. Stat. § 1-54(2) (2001) provides that a one-year limitations period applies to actions brought "[u]pon a statute, for a penalty or forfeiture, where the action is given to the State alone, or in whole or in part to the party aggrieved . . . except where the statute impos-

ing it prescribes a different limitation." Our Supreme Court has construed this statute to "apply to a civil action by the State to <u>collect</u> *unpaid* civil penalty assessments." *Ocean Hill Joint Venture v. N.C. Dept. of E.H.N.R.*, 333 N.C. 318, 323, 426 S.E.2d 274, 278 (1993) (emphasis added). We have held that "G.S. Sec. 1-54(2) applies only to actions based on statutes which *expressly* provide for a penalty or forfeiture, the purpose of which is punitive." *Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 368, 355 S.E.2d 189, 193 (1987) (emphasis in original).

Our appellate courts have construed N.C. Gen. Stat. § 1-54(2) as applicable to actions commenced by the State upon a statute to *collect* civil penalties or forfeitures. However, because the case at bar involves claims by the School Boards Association and various local school boards to *recover* payments provided to the public schools by Article IX, Section 7, which payments have already been collected by the State, we hold that N.C. Gen. Stat. § 1-54(2) is not applicable. We conclude that the trial court correctly applied the three-year limitations period provided in N.C. Gen. Stat. § 1-52 (2001) for "an action . . . [u]pon a liability created by statute" or "[a]gainst a public officer, for a trespass, under color of his office." In so holding we are mindful of this Court's previous determination that "a statute of limitations should not be applied to cases not clearly within its provisions, . . . and that where there is doubt as to which statute of limitations should apply, the longer statute should be chosen." *Holley v. Coggin Pontiac*, 43 N.C. App. 229, 240-41, 259 S.E.2d 1, 8, *disc. review denied*, 298 N.C. 806, 261 S.E.2d 919 (1979) (citation omitted).

In summary, we hold that the statutory scheme set forth in Article 31A of Chapter 115C of our General Statutes, which directs that payments determined to constitute penalties, fines, or forfeitures within Article IX, Section 7's meaning be remitted by the collecting agency to the Civil Penalty Fund, transferred to the School Technology Fund, and distributed to local public school administrative units based on student population for the implementation of school technology plans, is constitutional. Of the several payments collected by various State agencies, institutions, and licensing boards which the trial court held to be subject to Article IX, Section 7, we affirm the trial court's order as to some of these payments and reverse the trial court as to others, as discussed fully in Part II of this opinion. Finally, we hold that plaintiffs' claims are subject to a three-year limitations period.

**N.C. SCHOOL BDS. ASS'N v. MOORE**

[160 N.C. App. 253 (2003)]

Affirmed in part and reversed in part.

Judge HUNTER concurs in part and dissents in part.

Judge BRYANT concurs.

HUNTER, Judge, concurring in part and dissenting in part.

While I agree with most of the majority opinion, I disagree with the majority's conclusions that (I) the clear proceeds of payments collected by the North Carolina Department of Transportation ("DOT") pursuant to N.C. Gen. Stat. § 20-118(e) (2001) fall within the purview of Article IX, Section 7 of the North Carolina Constitution and therefore belong to the public schools, and (II) any penalty collected by a State agency from a public school or local school administrative unit should not be remitted to the Civil Penalty Fund for distribution among the state's public schools. Accordingly, I respectfully dissent from those portions of the majority opinion but concur in the majority's remaining holdings.

I.

As to the payments collected by DOT from owners of vehicles exceeding axle-weight limits: N.C. Gen. Stat. § 20-88 imposes an annual registration fee on property-hauling vehicles based upon their empty weight and heaviest load to be transported as declared by the owner or operator. N.C. Gen. Stat. § 20-88(a) (2001). A vehicle driven which exceeds the declared weight for which the vehicle is registered is subject to the penalties set forth in N.C. Gen. Stat. § 20-118(e). *See* N.C. Gen. Stat. § 20-88(k) (2001). Subsection (e) of N.C. Gen. Stat. § 20-118, which is entitled "Penalties," provides that "the [DOT] shall assess a civil penalty against the owner or registrant of [a] vehicle . . ." for each violation of the weight limits set forth in Section 20-118. N.C. Gen. Stat. § 20-118(e) (2001).

Article IX, Section 7 of the North Carolina Constitution provides the following, in pertinent part:

[T]he clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

N.C. Const. art. IX, § 7. Our Supreme Court has interpreted this constitutional provision as identifying the following two distinct funds for the public schools: "(1) the clear proceeds of all penalties and forfeitures in all cases, regardless of their nature, so long as they accrue to the state; and (2) the clear proceeds of all fines collected for any breach of the criminal laws." *Mussallam v. Mussallam*, 321 N.C. 504, 509, 364 S.E.2d 364, 366 (1988). Further, our Supreme Court has defined " 'penal laws,' " as used in Article IX, Section 7, as "laws that impose a monetary payment for their violation." *Id.* at 509, 364 S.E.2d at 367. The clear proceeds of all penalties and forfeitures which are punitive in nature and which are required to be paid to the state or to a department of the state are subject to Article IX, Section 7. *Id.* Monetary payments are "punitive rather than remedial in nature" if they are "intended to penalize the wrongdoer rather than compensate a particular party." *Id.* The label attached to the monetary payment is not determinative of whether such payment constitutes a penalty, forfeiture, or fine within the meaning of Article IX, Section 7. *Craven County Bd. of Education v. Boyles*, 343 N.C. 87, 92, 468 S.E.2d 50, 53 (1996).

The monies collected under N.C. Gen. Stat. § 20-118(e) are paid to the DOT, a state agency, and therefore "accrue to the state" as is required in order to fall under the purview of Article IX, Section 7. *Mussallam*, 321 N.C. at 509, 364 S.E.2d at 366. Thus, the determinative issue becomes whether the payments collected pursuant to N.C. Gen. Stat. § 20-118(e) are punitive or remedial in nature.

The weight penalties collected pursuant to N.C. Gen. Stat. § 20-118(e) are remedial in nature and therefore, do not belong to the public schools. The term "remedial" is defined in part as "[a]ffording or providing a remedy; providing the means of obtaining redress." Black's Law Dictionary 1296 (7th ed. 1999). The penalties at issue are intended to compensate the state for the deterioration of its highways due to operation of overweight vehicles thereon and are thus remedial in nature. In an affidavit submitted to the trial court, David Allsbrook ("Allsbrook"), Deputy Chief for Operations of the DOT, testified that, "[a]lthough passenger cars have little or no effect on the deterioration of highway surfaces and bases, larger vehicle[s] and heavier loads contribute significantly to road deterioration and failures." Allsbrook additionally stated that "[w]hile legal weight loads cause some deterioration[,] loads in excess of the legal limit cause significantly more deterioration." Although many factors contribute to road deterioration, according to Allsbrook, overweight vehicles

**N.C. SCHOOL BDS. ASS'N v. MOORE**

[160 N.C. App. 253 (2003)]

accelerate the deterioration of pavements which causes premature failures of the roadways which the DOT must repair. Moreover, the amount of monetary penalty that a violator must pay is calculated according to the number of pounds over the maximum amount of weight permitted under N.C. Gen. Stat. § 20-118 and the number of pounds over the declared weight for licensing purposes under N.C. Gen. Stat. § 20-88, providing additional support that these monetary payments are remedial in nature.

The collection of the annual registration fee and penalties for overweight vehicles is further analogous to the penalties under the North Carolina tax code for late filings, underpayment or failure to comply with the tax code, which the majority concludes, and in which I concur, are remedial and not subject to Article IX, Section 7 of the North Carolina Constitution. "All taxes levied under [Article 3 of the Motor Vehicle Act of 1937] are compensatory taxes for the use and privileges of the public highways of this State." N.C. Gen. Stat. § 20-97 (2001). Thus, the annual registration fees under N.C. Gen. Stat. § 20-88 are taxes for the use of the roads and highways of this State. As the proceeds from these taxes and the penalties are credited to the Highway Fund in order to finance the maintenance of the roads, it follows that these penalties are indeed remedial and not punitive.

Just as the income tax penalties are "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud," *Helvering v. Mitchell*, 303 U.S. 391, 401, 82 L. Ed. 917, 923 (1938) (footnote omitted), so to are penalties for overweight vehicles directly designed to safeguard the state's highways and reimburse the state for the expense of enforcing the weight restrictions and repairing roads damaged by overweight vehicles. Thus, I would hold that the monetary payments collected under N.C. Gen. Stat. § 20-118(e) are remedial in nature and therefore, do not belong to the public schools.

II.

I also disagree with the majority's holding that payments made by local public school systems to state agencies, including the $11,000.00 civil penalty paid by the Edgecombe County Board of Education to DENR for failure to comply with interim effluent limitations at the Phillip's School Wastewater Treatment Facility, should not be remitted to the Civil Penalty Fund.

As with all civil penalties paid to state agencies, the determining factor in deciding whether the payments collected from public school systems are subject to Article IX, Section 7 and belong to the public schools is whether those penalties are "punitive" or "remedial" in nature. *See Mussallam*, 321 N.C. at 509, 468 S.E.2d at 367. Thus, it is necessary to undertake a case-by-case determination of whether civil penalties paid by local public school systems are remedial or punitive in nature. As to penalties for environmental violations by local school systems, the majority opinion, in which part I concur, has already determined that civil penalties paid by environmental violators are punitive in nature and subject to Article IX, Section 7. Even though the environmental violator may be a school system, this does not change the punitive nature of civil penalties assessed by DENR, and those environmental penalties remain subject to Article IX, Section 7. The majority correctly notes that "[p]ublic policy in this jurisdiction, buttressed by the uniform decisions of [the North Carolina Supreme Court], will not permit a wrongdoer to enrich himself as a result of his own misconduct." *Davenport v. Patrick*, 227 N.C. 686, 689, 44 S.E.2d 203, 205 (1947). This public policy, however, does not mandate that the remaining school systems should be punished for the wrongdoing of another; it simply mandates that the offending school system be removed from the calculation of how to distribute the funds collected from the offending school system among the remaining public school systems.

The majority approach ignores the fact that as we have upheld the constitutionality of the Civil Penalty Fund, the penalty assessed against the Edgecombe County Board of Education would be distributed among all the eligible local school systems and not simply recycled back to Edgecombe County Schools. Therefore, under the majority analysis and using 2001-02 average daily membership figures for North Carolina and Edgecombe County Schools, out of an $11,000.00 civil penalty, Edgecombe County would be denied only $64.35 while the remaining school systems would lose $10,935.65.[3] The better approach is to remit the civil penalty to the Civil Penalty Fund and distribute it among the eligible school systems while simply omitting Edgecombe County from the distribution. This method has the dual benefit of providing the inno-

---

3. The North Carolina Public Schools Statistical Profile 2003 lists Total Average Daily Membership for North Carolina Public School Systems in 2001-02 as 1,289,523 and Average Daily Membership for Edgecombe County Schools during that year as 7,544. North Carolina Department of Public Instruction, *North Carolina Public Schools Statistical Profile*, 4, 160 (2003).

cent local public school systems with funds from a punitive civil penalty and to receive the benefits of the entire $11,000.00 without allowing the offending school system to be enriched in any way by its own wrongdoing.

Thus, I would hold that the $11,000.00 civil penalty assessed against the Edgecombe County Board of Education for environmental violations is punitive and subject to Article IX, Section 7, however, in determining how to distribute the penalty among the eligible school systems from the Civil Penalty Fund, the average daily attendance of Edgecombe County public schools should not be included in the calculation. Further, none of the proceeds of the penalty should be disbursed to the Edgecombe County Board of Education and this case should be remanded to the trial court to implement that calculation.